**Limmie WEST, III, Plaintiff-Appellee,**

v.

**STATE OF LOUISIANA, Defendant-Appellant.**

**No. 72–1338.**

United States Court of Appeals, Fifth Circuit.

May 1, 1973.

Rehearing En Banc Granted Sept. 5, 1973.

---

Wm. J. Guste, Jr., Atty. Gen. of La., Baton Rouge, La.; Jim Garrison, Dist. Atty., Shirley Wimberly, Jr., Asst. Dist. Atty., Byron P. Legendre, New Orleans, La., for defendant-appellant.

George M. Leppert, New Orleans, La., Court appointed, for plaintiff-appellee.

Before RIVES, WISDOM and RO-NEY, Circuit Judges.

WISDOM, Circuit Judge:

Limmie West was convicted of armed robbery after a jury trial in the Criminal District Court for the Parish of Orleans, Louisiana. On June 12, 1969, he was sentenced to forty-nine years and six months at hard labor. He did not appeal his conviction. A year after his conviction he filed a petition for habeas corpus in the state trial court. West's petition alleged that his lawyer, privately retained, had conferred with him for only five minutes before the trial, had no opportunity to subpoena witnesses, and had no time to prepare an effective defense. After holding an evidentiary hearing the state court denied the petition. The Supreme Court of Louisiana denied review. West then filed what he termed a "petition for rehearing" with the trial court, alleging in addition that he had been denied his right to appeal. After forty-five days elapsed without action by the trial court, West sought a writ of mandamus from the Louisiana Supreme Court. This writ was denied for West's failure to comply with procedural requirements.

After five and one-half months passed without action by the state trial court on his petition for rehearing, West sought habeas corpus relief from federal district court. His petition named the State of Louisiana as respondent. While this federal habeas petition was pending, the state court finally denied his petition for rehearing, seven months after it was filed. The federal district court subsequently granted West's petition without holding a further hearing, and ordered the State to release or retry West within

thirty days. The State appeals from this order. It does not appear that the State presented any of its contentions to the district court, nor does the State contest the district court's holding that West was denied adequate representation by counsel. Though we amend the district court's order to direct it against West's immediate custodian rather than against the State of Louisiana, we affirm the holding of the district court in all other respects.

## I.

The State first contends that West's petition must be dismissed on the ground that he failed to name a proper respondent. The federal habeas corpus statute requires that an application for habeas corpus

> shall allege the facts concerning the applicant's commitment or detention, the name of the person who has custody over him and by virtue of what claim or authority, if known.

28 U.S.C. § 2242 (1972). West was in the immediate custody of the warden of the Louisiana State Penitentiary. His federal habeas corpus petition, however, named the State of Louisiana as respondent, rather than the warden. The State argues on this appeal that the failure to name a proper respondent is suf-ficient ground for dismissing a habeas corpus petition.[1]

Failure to name a proper respondent is a procedural rather than a jurisdictional defect, and it may be corrected by amendment of the petition.[2] See Ashley v. State, 9 Cir. 1968, 394 F.2d 125; Developments in the Law—Federal Habeas Corpus, 83 Harv.L.Rev. 1038, 1167 (1970).

It is true that in the present case West apparently made no effort to correct his petition, and the district court did not amend it on its own initiative. But since West's unamended petition supplied in substance all the information which a habeas petition must contain, denial of his petition would give an unreasonably narrow reading to the habeas corpus statute.

In preparing his petition West utilized a standard form supplied by the District Court for the Eastern District of Louisiana.[3] He entered "State of Louisiana" as respondent at the head of the form. Line 1 of the form requires the petitioner to state his place of detention. West entered "Louisiana State Penitentiary, Angola, Louisiana" as his place of detention on this line. This entry makes it plain that his immediate

---

1. See Olson v. California Adult Authority, 9 Cir. 1970, 423 F.2d 1326, cert. denied, 1970, 398 U.S. 914, 90 S.Ct. 1717, 26 L.Ed.2d 78; Mihailoviki v. California, 9 Cir. 1966, 364 F.2d 808; King v. California, 9 Cir. 1966, 356 F.2d 950; Gaito v. Strauss, 3 Cir. 1966, 368 F.2d 787, cert. denied, 1967, 386 U.S. 977, 87 S.Ct. 1173, 18 L.Ed.2d 139; Dunbar v. Cranor, 9 Cir. 1953, 202 F.2d 949.

 Though the State as well as the warden may be said to have "custody" over state prisoners, courts have long held that in habeas corpus cases the warden, as immediate custodian, is the only proper respondent. Wales v. Whitney, 1885, 114 U.S. 564, 574, 5 S.Ct. 1050, 29 L.Ed. 277; Sanders v. Bennett, 1945, 80 U.S.App.D.C. 32, 148 F.2d 19.

2. Occasional cases contain dicta to the effect that the failure to name the proper respondent is a jurisdictional defect re-quiring immediate dismissal. E. g., Olson v. California Adult Authority, 9 Cir. 1970, 423 F.2d 1326, cert. denied, 1970, 398 U.S. 914, 90 S.Ct. 1717, 26 L.Ed.2d 78, citing Morehead v. California, 9 Cir. 1964, 339 F.2d 170. Courts seldom dismiss for this reason alone, however, and often reach the merits of the petition even when purporting to apply strict rules of pleading. E. g., Morehead v. California, supra; Gaito v. Strauss, 3 Cir. 1966, 368 F.2d 787; Mihailoviki v. California, 9 Cir. 1966, 364 F.2d 808; Schnepp v. Oregon, 9 Cir. 1964, 333 F.2d 288.

3. For a discussion of standard forms for habeas corpus petitions, see Applications for Writs of Habeas Corpus and Post Conviction Review of Sentences in the United States Courts, 33 F.R.D. 363, 382–384, 391–408.

custodian was the warden of the Angola penitentiary.[4]

West's petition therefore adequately conforms with 28 U.S.C. § 2242. The statute requires the petitioner to "allege . . . the name of the person who has custody over him." It does not specify that his allegation must be in the title of the case. Nor does it suggest that an allegation contained in the body of the petition may or must be disregarded by the courts.

The purposes of the statutory requirement are equally well served whether the immediate custodian is named as respondent or is identified elsewhere in the petition. Some courts have held it necessary to name the immediate custodian as respondent on the ground that it is he who must certify the cause of detention and respond to the court's order. *See, e. g.*, Johnson v. State, 1968, S.D.Fla., 283 F.Supp. 494, 495–496; Osborn v. Court of Common Pleas, 1967, W.D.Pa., 277 F. Supp. 756. In fact, however, the role of the warden in habeas corpus litigation is limited to performing the perfunctory duties of producing the prisoner for a hearing or of releasing the prisoner should the petition be granted. Indeed, the response to the petition is customarily prepared by the state's attorney. Thus in this case the district attorney's office for the Parish of Orleans responded both to West's state habeas corpus petition, in which he named the warden as respondent, and to the federal habeas corpus petition, in which West named the State as respondent. The warden had no interest in the proceeding independent of that of the State. By supplying the locus of his detention, together with other information required by the standard form for habeas petitions, West furnished sufficient information to enable the state's attorney to represent the interests of the State and the warden, and to enable the court to frame a proper order. There is there-fore no reason not to consider his petition as though he had named the proper respondent. See Wooley v. Consolidated City of Jacksonville, 5 Cir. 1970, 433 F. 2d 980.

Strict interpretation of the procedural requirements of § 2242 is sometimes justified as necessary to protect the courts from the burden of entertaining frivolous petitions. *Developments, supra*, 83 Harv.L.Rev. at 1175. Precisely the opposite result would occur were we to dismiss West's petition for failure to name a proper respondent. Dismissal for this reason would be without prejudice to West's right to submit a petition naming the correct respondent. See, e. g., Burns v. Welch, 1947, 81 U.S.App.D. C. 384, 159 F.2d 29. Thus West would once more have to labor up the judicial ladder, and the judiciary would once more have to consider his case. The result would only be to delay granting the relief to which West is entitled.

■ This case exemplifies well the need for giving a liberal construction to habeas corpus pleadings. See Gibbs v. Burke, 1949, 337 U.S. 773, 69 S.Ct. 1247, 93 L.Ed. 1686; Cisneros v. Beto, 5 Cir. 1970, 423 F.2d 201, cert. denied, 1970, 400 U.S. 839, 91 S.Ct. 78, 27 L.Ed.2d 72; Aiken v. United States, 4 Cir. 1960, 282 F.2d 215, 216; R. Sokol, Federal Habeas Corpus 99–102 (2d rev. ed. 1969); *Developments, supra*, 83 Harv.L.Rev. 1174–75. West prepared his petition without the assistance of counsel. The record shows that he had only a limited education and had subnormal intelligence. His petition is meritorious and adequately prepared in every respect save his failure to designate the proper respondent. It is possible that this error may have been induced by the standard habeas corpus form. The form is designated for the use of "Persons in State Custody," but nowhere does it explain that, for purposes of pleading, the

---

**4.** Identification of the immediate custodian by official title, rather than name, is sufficient under Rule 25(d)(2) of the Federal Rules of Civil Procedure. R.

Sokol, Federal Habeas Corpus 83; Developments in the Law—Federal Habeas Corpus, 83 Harv.L.Rev. 1038, 1167 (1970).

petitioner is to regard himself as in the warden's custody and not the state's.[5]

■ We are unwilling to disregard a violation of a petitioner's constitutional rights solely because he has tripped on a procedural hurdle of the kind involved in this case. See Chapman v. Texas, 1965, S.D.Tex., 242 F.Supp. 378, 381. When, as here, a layman preparing his own petition supplies in substance all the information which the statute requires, the petition may and should be considered on its merits.[6]

■ Though the district court would thus have been justified in treating West's petition as though he had named the warden rather than the State as respondent, the district court's order nevertheless was directed against the State. The order to release West should have been directed to the warden, as the state official responsible for carrying out the release. The order is affirmed, subject to the condition that it be amended to direct the warden to release West unless the State retries him within a reasonable time, preferably thirty days.

## II.

The State next contends that the district court erred in granting relief without holding an evidentiary hearing and without giving comity to the findings of the state courts. This contention is without merit.

■■ Under the standards enunciated by the Supreme Court in Townsend v. Sain, 1963, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770, a federal evidentiary hearing is required in habeas cases only when factual issues are not fully and fairly developed at the state level. In the present case all the relevant witnesses testified extensively at the state hearing. The state court's findings of fact pertinent to this appeal were that (1) West's lawyer had adequate time to prepare for the trial; (2) West conferred with his lawyer for more than five minutes; (3) West's lawyer was not appointed by the court in place of any other attorney.[7] The district court in granting relief did not reject these findings of fact. Rather, the district court in effect adopted the state court's findings of fact and differed with the state court only on a matter of law: whether in view of the facts of this case West's constitutional rights had been violated.

■ Regardless of the thoroughness of state factfinding procedures, considerations of comity do not obligate feder-

---

5. That the standard form for federal habeas petitions may have led West astray is suggested by the fact that his state habeas petition correctly named the warden as respondent.

6. The State's argument that West's petition is barred by the doctrine of sovereign immunity is of no merit, since we regard this petition, like all other habeas corpus actions, as having been brought not against the State but against the warden. See Chessman v. Teets, 9 Cir. 1956, 239 F.2d 205, 214; R. Sokol, *supra*, at 84; Note, Remedies Against the United States, 70 Harv.L.Rev. 827, 865 (1957).

7. The state court's findings at the state habeas hearing were as follows:
 The Court finds that the defendant was not denied due process of law. That counsel for the defendant had adequate time within which to prepare this case for trial. The Court finds that the defendant had more than a five minute consultation with his counsel.
 The Court also finds that the Court did not appoint Mr. Masinter in place of any other attorney as a substitute counsel for the defendant in this case. Now, Paragraph Three of the issues involved, petitioner alleges by asking the following question: "Can the petioner be guilty of attempted armed robbery without attempting to take anything of value?" This of course, is a question of fact to be determined by the jury, and was determined by the jury.
 The Court therefore, finds as a matter of fact and as a matter of law, the defendant was not deprived of any of his constitutional rights; and consequently, denies petitioner's application for a writ of habeas corpus and orders that the defendant be transported forthwith to the Louisiana State Penitentiary at Angola under the original commitment herein.

al courts in habeas corpus cases to defer to state determinations on matters of federal law. The obligation of the federal judge is the opposite: to apply the proper federal constitutional standards based on the underlying facts, although the conclusions drawn from the facts may differ from the state court's conclusions. Townsend v. Sain, *supra,* 372 U. S. at 318, 83 S.Ct. 745; Brown v. Allen, 1953, 344 U.S. 443, 506–507, 73 S.Ct. 397, 97 L.Ed. 469 (Frankfurter, J.).

Where state factfinding procedures are adequate, comity and judicial economy dictate that the federal courts should not hold separate evidentiary hearings. To hold a federal hearing is to call state factfinding procedures into question. But comity does not govern the application by federal courts of their independent judgment as to federal law. That is their obligation in all cases, an obligation the district court in this case properly discharged.

### III.

The State contends that even if the district court was correct in finding that West's lawyer furnished inadequate representation this finding was irrelevant, since the State was in no way responsible for this inadequate representation. West was represented not by appointed counsel but by a privately retained attorney. The actions of a privately retained attorney, the State contends, cannot constitute state action, and consequently West cannot complain that he was denied effective assistance of counsel in violation of his Fourteenth Amendment due process rights.

▮ In Williams v. Beto, 5 Cir. 1965, 354 F.2d 698, 704, the Court repeated "the general rule that relief from a final conviction on the ground of incompetent or ineffective counsel will be granted only when the trial was a farce, or a mockery of justice, or was shocking to the conscience of the reviewing court, or the purported representation was only perfunctory, in bad faith, a sham, a pre-

tense, or without adequate opportunity for conference and preparation". But as then Chief Judge Tuttle said in Bell v. Alabama, 5 Cir. 1966, 367 F.2d 243, 247:

> "It is clear that this test [after quoting from Williams v. Beto, 354 F.2d 698, 704] applies to cases in which counsel is retained by or for an accused as well as to cases in which counsel is appointed to represent an indigent defendant. Scott v. United States, 334 F.2d 72 (6th Cir. 1964)."

Earlier, Judge Brown had written for the panel of Brown, Wisdom, and Bell in Porter v. United States, 5 Cir. 1962, 298 F.2d 461, 463, "The Constitution assures a defendant effective representation by counsel whether the attorney is one of his choosing or court-appointed." See also Holland v. Henderson, 5 Cir. 1972, 460 F.2d 978, 981, United States v. Pinc, 5 Cir. 1971, 452 F.2d 507, the long footnote written as dictum in Breedlove v. Beto, 5 Cir. 1968, 404 F.2d 1019, 1021, and Judge Rives's dissent in Langford v. Alabama, 5 Cir. 1970, 442 F.2d 760, 764–768.

In Holland v. Henderson, E.D.La.1970, 317 F.Supp. 438, 442, aff'd, 460 F.2d 978, 981, Judge Cassibry carefully considered the question. He wrote:

> "Where a defendant has been denied effective assistance of counsel it does not matter, in the absence of a knowledgeable waiver, whether his counsel was court-appointed or privately employed. 'The prejudice to a defendant from the failure to have the effective assistance of counsel results whether counsel is court appointed or selected by the accused.' Craig v. United States, 217 F.2d 355, 359 (6th Cir. 1954); Cf. Larry Buffalo Chief v. State of South Dakota, 425 F.2d 271, 279 (8th Cir. 1970)."

We agree with the perceptive analysis by Professor James R. Craig in his article, The Right to Adequate Representation in the Criminal Process: Some

Observations, 22 S.W.L.J. 260, 272 (1968): [8]

Early lower court decisions on effectiveness of counsel often drew distinctions between retained and appointed counsel, with the work of retained counsel being virtually immune from review. That seems now, at least doctrinally, to be a thing of the past. The distinction was supported, or explained, on two discrete grounds. The latter in time was that the state action required to energize the fourteenth amendment prohibitions was not present where review of the work of retained counsel was sought. That concept was subject to the obvious criticism that what was really being claimed was that the trial at the hands of the state was unfair, although caused by something over which the state ostensibly had no direct control. A useful analogy existed in the mob influence cases, where the existence of the requisite state action was not questioned. [Citing Moore v. Dempsey, 261 U.S. 86 [43 S.Ct. 265, 67 L.Ed. 543] (1923)]. Further, the state action theory was attacked by the argument that the necessary state action could be found in the fact that attorneys were licensed by the state. But the state action concept of old, no matter what its past vitality, has little influence today. [Referencing Shelley v. Kraemer and its progeny]. Perhaps the more viable explanation of the distinction was the earlier one that referred to a principal-agent relationship between defendant and defender. That explanation was forcefully attacked as simply unrealistic in fact in most cases. Whatever the rationale, if the distinction had not been discarded before *Gideon, Massiah,* and *Escobedo,* it would seem now to be effectively foreclosed. [Referencing basis of *Gideon* that a man is not competent to represent himself at trial and therefore would seem to be incompetent to evaluate his lawyer's actions]. See also Williams, The Twilight of State Action, 41 Tex.L.Rev. 347 (1963)."

This Court's decision in Bell v. Alabama applies to retained counsel the low standard of effectiveness required by Williams v. Beto which would do no more than prevent the trial from becoming "a farce, or a mockery of justice." We hold that the applicable standard should be that stated in MacKenna v. Ellis, 5 Cir. 1960, 280 F.2d 592, 599: [9]

"We interpret the right to counsel as the right to effective counsel. We interpret counsel to mean not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render *and rendering* reasonably effective assistance." (Emphasis by the Court.)

To "administer justice without respect to persons, and do equal right to the poor and to the rich" [10] we must apply the same standard, whether counsel be court-appointed or privately retained. From the facts of this case it is plain that West's lawyer fell far short of this standard. West might just as well have had no lawyer. By his own admission West's attorney conferred with West for no more than an hour prior to trial, and perhaps for little more than five minutes. He conducted no investigation. At the trial he called no witnesses for the defense. After the prosecution presented its case, the defense moved for a directed verdict. When the court de-

8. Credit for the reference to and quotation from Professor Craig's article should go to the excellent brief filed by John L. Jeffers, Jr., Esq., court-appointed counsel for appellant in case No. 72-2459 on the docket of this Court. Fitzgerald v. Beto, Director, argued and submitted on March 13, 1973.

9. See also Pennington v. Beto, 5 Cir. 1971, 437 F.2d 1281, 1285–1286; Caraway v. Beto, 5 Cir. 1970, 421 F.2d 636, 637; Brown v. Beto, 5 Cir. 1967, 377 F.2d 950, 957–958; cf. Williams v. United States, 5 Cir. 1971, 443 F.2d 1151; United States v. Rubin, 5 Cir. 1970, 433 F.2d 442, 444–445.

10. 28 U.S.C. § 453.

nied this motion, the defense immediately rested. We hold that the district court was correct in finding that West's legal representation was so inadequate as to deny his constitutional rights.

## IV.

Finally, the State argues that West's petition should have been denied for failure to exhaust state remedies. West unquestionably did exhaust state remedies with respect to his claim of ineffective assistance of counsel. He raised this claim in his original petition for habeas corpus; it was denied by the trial court and unsuccessfully appealed to the Supreme Court of Louisiana.

West's petition for rehearing contained an entirely new claim. He alleged that his lawyer had erroneously informed him that the denial of his motion for a new trial exhausted his right to appeal. West argued in his petition for rehearing that this misleading statement by his lawyer constituted a denial of his right to appellate review. The trial court denied the petition for rehearing, but West never appealed this denial to the Supreme Court of Louisiana. Consequently, the highest state court has not had an opportunity to pass on West's right-to-appeal claim.

■■■■ Ordinarily a state prisoner seeking federal habeas corpus must exhaust available state remedies with respect to each claim in his habeas petition, or his petition will be denied by the federal courts. Burroughs v. Wainwright, 5 Cir. 1972, 454 F.2d 1165; Garrett v. Texas, 5 Cir. 1970, 435 F.2d 709; Wheeler v. Beto, 5 Cir. 1969, 407 F.2d 816. The requirement that a petitioner exhaust state remedies before seeking federal relief is, however, not a jurisdictional prerequisite. It is founded on flexible considerations of comity. Fay v. Noia, 1963, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837; Darr v. Burford, 1950, 339 U.S. 200, 70 S.Ct. 587, 94 L. Ed. 761; United States ex rel. Gockley v. Myers, 3 Cir. 1969, 411 F.2d 216 (en banc); Waddell v. Wainwright, 5 Cir.

1969, 410 F.2d 736; Beto v. Martin, 5 Cir. 1968, 396 F.2d 432. In some cases, therefore, the need to assure prompt protection for federal rights may supersede the policy in favor of deference to state judicial processes so that a federal court may proceed to the merits of a habeas petition even though the petitioner has not exhausted state remedies. See *Developments, supra,* 83 Harv.L.Rev. at 1094–1103.

■■■■ Two considerations in the present case undercut the usual policy of requiring exhaustion. First, the state proceedings were marked by delay. The principle that federal courts should defer to state courts in the interests of comity assumes that the state courts will give prompt consideration to claims of violation of federal rights. See Bartone v. United States, 1963, 375 U.S. 52, 84 S.Ct. 21, 11 L.Ed.2d 11; Parker v. Texas, 5 Cir. 1972, 464 F.2d 572, 573; St. Jules v. Beto, 5 Cir. 1972, 462 F.2d 1365; Dixon v. Florida, 5 Cir. 1968, 388 F.2d 424, 426; R. Sokol, *supra,* at 173. West waited five and one-half months between the time he submitted his petition for rehearing and the time he filed his federal habeas petition. The state court took no action on West's petition for rehearing until a total of seven months had elapsed, when it denied the petition without written reasons during the pendency of West's federal habeas action. Lengthy delay in state proceedings, if unjustified, may itself be sufficient reason for waiving the exhaustion requirement. See Dixon v. Florida, 5 Cir. 1968, 388 F.2d 424; Smith v. Kansas, 10 Cir. 1966, 356 F.2d 654, cert. denied, 1967, 389 U.S. 871, 88 S.Ct. 154, 19 L.Ed.2d 151.

■■■■ If delay were the only consideration, the proper course would be to remand the case to the district court for a hearing as to whether the delay was justified. But there is another reason for waiving the exhaustion requirement in this case. The State did not contend in the district court that West had failed to exhaust his state remedies. Failure

to raise the contention of lack of exhaustion at the district court level is ordinarily a bar to its consideration on appeal. See Jenkins v. Fitzberger, 4 Cir. 1971, 440 F.2d 1188, 1189 & n. 2; Brown v. Fogel, 4 Cir. 1967, 387 F.2d 692; Wade v. Peyton, 4 Cir. 1967, 378 F.2d 50, 51 (dictum); cf. Tolg v. Grimes, 5 Cir. 1966, 355 F.2d 92; Goins v. Allgood, 5 Cir. 1968, 391 F.2d 692. By failing to press this issue below, the State implicitly acknowledged the insubstantiality of its interest in further adjudicating West's claim. Against this minimal state interest, there is a substantial interest on the part of both the defendant and the federal courts in promptly resolving this case. West's constitutional rights were plainly violated by the complete inadequacy of the representation accorded him at his state trial. We see no reason to delay longer in vindicating these rights.

The order of the district court is amended to direct the warden of the Louisiana State Penitentiary to release West if he is not retried by the State within a reasonable time, preferably within 30 days. In all other respects the judgment is affirmed.

RONEY, Circuit Judge (dissenting):

I respectfully dissent. There are two important issues in this case: *first,* the showing required to raise the denial of a continuance of a trial to a denial of constitutional due process, and *second,* the extent to which the amount of preparation for trial by privately retained counsel is to be deemed state action within the meaning of the Fourteenth Amendment. I would remand this case for a full development of the facts because it involves critical matters that all court systems are facing, which cannot be properly resolved on the slim 33-page transcript of the state habeas corpus hearing.

This dissent is not written for the purpose of resolving the complex problems involved in this case, but rather for the purpose of recognizing that the ram-

ifications were not fully and properly considered before the issuance of the writ of habeas corpus. Perhaps before the result reached by the majority becomes the binding precedent in this Court, it would be well to consider some of the thoughtful suggestions made by Judge Henry J. Friendly in Is Innocence Irrelevant? Collateral Attack on Criminal Judgments, 38 U.Chi.L.Rev. 142 (1970).

The crime of attempted armed robbery was committed on April 25, 1969; petitioner was charged in a bill of information on April 30, 1969; he was arraigned on May 8, 1969, at which time he was represented by retained counsel; he stood in a lineup on May 13, 1969, represented by his retained counsel; and he was tried on June 12, 1969, represented by the same retained counsel. The retained counsel had represented petitioner in prior criminal cases. Petitioner was found guilty and was sentenced on July 2, 1969. A year later, he first applied for release on the ground that he was deprived of his constitutional right to counsel. The District Court granted the writ, on the state record, without any further evidentiary hearing. On the same record, the state court had resolved the factual issues against petitioner. The District Court resolved them in favor of petitioner.

I.

Petitioner's counsel requested a continuance of the state trial on the ground that he had no opportunity to confer with the petitioner and was not prepared to go to trial. The continuance was denied. The state court felt that the petitioner was attempting to evade trial:

> After the court denied the motion for a continuance, Mr. Masinter [West's attorney] conferred with relator [West], and then came up to the Bench and informed the Court that his client had advised him that his mother had retained the services of another attorney, George Sladovich, Esq., [the attorney who associated

Mr. Masinter in the case]. The Court advised Mr. Masinter that the case was going to trial because the Court felt that this was a ploy on the part of the defendant to evade trial. The evidence also discloses that Mr. Masinter had been representing relator for several years, and had represented him in several cases prior to this one in the Criminal District Court.

Since the denial of a continuance is clearly state action under the Fourteenth Amendment, it is the crux of the problem in this case, and the majority neither mentions it nor pays the slightest heed to the long standing rule in this Circuit, and in most states, that the grant or denial of a continuance is within the sound discretion of the trial judge. *See, e. g.*, United States v. Abshire, 471 F.2d 116 (5th Cir. 1972); 17 Am.Jur.2d Continuance § 27 (1964); 17 C.J.S. Continuances § 5 (1963).

At the admonition of the Judicial Conference of the United States, every district court in this Circuit has recently adopted a plan for expediting criminal trials. Many state courts are pursuing similar measures. The criminal justice system now seems firmly committed to the doctrine that the public has as great an interest in expeditious trials as do any defendants.

Every trial judge of experience has probably heard most of the excuses that can be given for delaying the trial of criminal defendants. A person who knows himself to be guilty and who recognizes that there is little or no chance of escaping long term confinement has little interest in a speedy trial. Often, the most effective thing counsel can do is to postpone the trial as long as possible. Evidence may be lost, witnesses may become unavailable or their memories may fade, the case may pass into the hands of less zealous prosecutors, and a number of other things might happen that would make time work to the advantage of the defendant. Any means used for a continuance of his trial may help the defendant. If this delay can be accomplished by lack of preparation, then lack of preparation may be exactly what the defendant wants.

But great pressures are being brought on each trial court to dispose promptly of the business before it, and therefore, to deny motions for continuance. Yet, needless to say, constitutional rights cannot be foreclosed in the interest of speed and current, up-to-date dockets.

This brings us face to face with the critical question: what latitude will be given to trial judges in actually controlling this area of the judicial system—and more importantly, in the federal-state context, how tightly does the Constitution control the state trial judge's decision as to whether a trial should be postponed at the request of defendant and his retained counsel? There seems little point in following a broad rule as to the discretion of trial judges on the continuance of cases if we are to follow a narrow rule in the effective counsel-trial preparation dichotomy.

To resolve this question, facts are needed. Was the counsel's protestation as to other pressing matters that prevented preparation factually based? Was the state trial court's determination that the requested continuance was a ploy on the part of defendant to evade trial erroneous? At the heart of the matter: To what extent will the criminal justice system allow the public requirement to expedite the trial of cases to be thwarted by retained counsel's failure to prepare for trial? As an overlay to the whole problem, we should remember that the greatest right preserved to an accused citizen by the Constitution is the right to retain his own counsel, including busy counsel who have other responsibilities in addition to the representation of the defendant in the case at bar. I would require an evidentiary hearing to determine the facts concerning the requested continuance and the state court's denial thereof.

## II.

This Court has not resolved the question as to what conduct of retained trial counsel the state is responsible for under the Fourteenth Amendment. Although McGriff v. Wainwright, 431 F.2d 897 (5th Cir. 1970), stated flatly that "misfeasance by privately retained counsel is not state action and therefore does not constitute a deprivation of due process or equal protection," 431 F.2d at 899, it has apparently enjoyed little recognition in the opinions in this Court. Neither has Andrews v. Robertson, 145 F.2d 101 (5th Cir. 1944), which held that the effectiveness or ineffectiveness of *retained* counsel in state criminal trials is beyond the purview of the federal courts.

In Bell v. Alabama, 367 F.2d 243 (5th Cir. 1966), the Court *said* that there is no difference between appointed and retained counsel, but the Court there merely remanded for an evidentiary hearing. The case is not a definitive holding as to the standard to be applied. In several cases panels of this Court have *said* that retained counsel and appointed counsel are subject to the same standard of effectiveness, but then they have held that counsel in those cases met the standard, so the question did not have to be decided to dispose of those cases. *E. g.,* Holland v. Henderson, 460 F.2d 978 (5th Cir. 1972). Of course, the Court was at one time concerned with whether appointed counsel had to meet the same standard as retained counsel, but it had little trouble deciding that the ineffectiveness of state-appointed counsel is a state responsibility. *See* United States v. Pinc, 452 F.2d 507 (5th Cir. 1971); Worts v. Dutton, 395 F.2d 341 (5th Cir. 1968); Williams v. Beto, 354 F.2d 698 (5th Cir. 1965).

Although involving retained counsel in a federal prosecution, the case of Porter v. United States, 298 F.2d 461 (5th Cir. 1962), is not decisive of the point because the case was remanded for an evidentiary hearing on the charge that, unknown to the defendant, the retained attorney was in such a duplicitous position that he refused to call a key witness, the narcotics officer, whom he also represented.

Regardless of what analysis may be made of the various cases in our Court, it is safe to say that we have indicated contrary dispositions of the problem. But by affirming the District Court's grant of the writ of habeas corpus to a state prisoner in this case, this majority clearly holds that the apparent failure of retained counsel to prepare properly for trial constitutes state action which reaches constitutional proportions. On the record before us, I am unwilling to charge the state with this responsibility.

Although the state trial transcript has not been made available in the Federal Court, it appears that petitioner was identified at the lineup and at the trial by several eyewitnesses. Fifteen witnesses were subpoenaed by the prosecution. There is nothing in the record before us to indicate what prepared counsel might have done. Although this consideration is irrelevant in the *Gideon* context where there is a complete absence of counsel, it should become highly important in judging state responsibility for unpreparedness of retained counsel. The system will serve no useful purpose in requiring retained counsel to run up expense in preparation that will obviously be of no use to his client. What would an investigation have uncovered? What witnesses could have been called? How was petitioner's defense prejudiced? Petitioner has never, in any court, shown how his defense would have benefited by delay for further preparation by his trial counsel. The record indicates that he contemplated an alibi defense. At the very least, we should require a showing of what that defense might have been, including the identity of corroborating witnesses—some showing that the defense could be asserted in good faith.

At the very least, the trial record should be studied before the state judgment is set aside on the ground that petitioner was not adequately represented at the trial.

### ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

Before JOHN R. BROWN, Chief Judge, and WISDOM, GEWIN, THORNBERRY, COLEMAN, GOLDBERG,

AINSWORTH, GODGOLD, DYER, SIMPSON, MORGAN, CLARK, RONEY and GEE, Circuit Judges.

BY THE COURT:

A member of the Court in active service having requested a poll on the application for rehearing en banc and a majority of the judges in active service having voted in favor of granting a rehearing en banc.

It is ordered that the cause shall be reheard by the Court en banc with oral argument on a date hereafter to be fixed. The Clerk will specify a briefing schedule for the filing of supplemental briefs.