**Clyde PITTS**

v.

**Joseph HOPPER, Warden, Georgia State Prison, Reidsville, Georgia.**

**No. C74–739A.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Dec. 14, 1974.

Glenn Zell, Atlanta, Ga., for petitioner; Clyde Pitts, pro se.

Robert S. Stubbs, II, Asst. Atty. Gen., State of Ga., Atlanta, Ga., for respondent.

## ORDER

MOYE, District Judge.

Clyde Pitts, a state prisoner presently incarcerated at the Georgia State Prison in Reidsville, Georgia, brings this habeas corpus action pursuant to 28 U.S.C. § 2254 in forma pauperis. Pitts alleges that the ineffective assistance of counsel before, during and after his burglary trial in the Superior Court of Henry County, Georgia, on October 27, 1971, prevented him from getting a fair trial.

A jury found Pitts guilty of burglary and, due to a prior conviction, sentenced him to 20 years imprisonment.

### I.

Petitioner has exhausted his available state remedies, 28 U.S.C. § 2254(b), (c). On direct appeal to the Court of Appeals of Georgia, petitioner's conviction was affirmed. *Pitts v. State,* 128 Ga.App. 434, 197 S.E.2d 495 (1973) (four judges dissenting). Thereafter Pitts sought habeas corpus relief in the Superior Court of Henry County. As a basis for relief, Pitts asserted, *inter alia,* that he was denied effective assistance of counsel at his burglary trial. After a hearing, the Superior Court of Henry County found Pitts' contentions to be without merit and remanded him to the custody of the Henry County Sheriff.

On appeal the Supreme Court of Georgia affirmed the denial of habeas corpus relief by the Superior Court of Henry County. *Pitts v. Glass,* 231 Ga. 638, 203 S.E.2d 515 (1974).

Pitts, through counsel, filed this petition for habeas corpus relief in this district on April 18, 1974. In addition, this Court received a second *pro se* habeas petition from petitioner alleging that there was insufficient corroboration of an accomplice's testimony to convict him. The Court refuses to take cognizance of this second petition. Petitioner is represented by Glenn Zell, Esq., attorney of record in this case. Petitioner may not now appear or act in his own behalf unless notice is given the Court that Mr. Zell has withdrawn as attorney of record.

## II.

■ As a threshold matter, the Court holds that a federal evidentiary hearing, pursuant to the standards set out in *Townsend v. Sain,* 372 U.S. 239, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), and the provisions of 28 U.S.C. § 2254(d), is not required. Respondent has attached the pertinent portions of the transcript of the state habeas corpus hearing and a copy of the transcript of petitioner's burglary trial to its motion to dismiss or for summary judgment. The Court is also in receipt of a complete copy of the state habeas corpus court's order, including the written findings of fact and conclusions of law.

The Superior Court of Henry County, in its habeas corpus proceedings, examined the transcript of the burglary trial and heard testimony from Pitts; Ray Tucker, the attorney who represented Pitts at the burglary trial; Edward E. McGarity, the prosecuting district attorney; and an attorney who represented one of Pitts' coindictees.

On the basis of Attorney Tucker's testimony, the state habeas corpus court found that Pitts was represented in a competent manner, and denied habeas corpus relief. *Pitts v. Glass,* 231 Ga. at 639, 203 S.E.2d 515 (1974). Thus, it is apparent that the state habeas corpus judge credited the testimony of Attorney Tucker as opposed to the testimony of Pitts. The merits of the factual dispute having been resolved adversely to Pitts, the burden falls upon him to establish by convincing evidence that the findings of the state court are erroneous. 28 U.S.C. § 2254(d). See *LaVallee v. Delle Rose,* 410 U.S. 690, 93 S.Ct. 1203, 35 L.Ed.2d 637 (1973). An examination of the trial transcript, state habeas corpus court transcript and written findings of fact and conclusions of law convinces this Court that an adequate record was developed below and it appears to the Court that the findings of fact at petitioner's state habeas corpus hearing were not erroneous. Since Pitts, in his petition or by reference to the state habeas cor-

pus record, has failed to show otherwise, the findings of the state court are presumed to be correct and further evidentiary development in this case is unnecessary. *Dempsey v. Wainwright,* 471 F.2d 604 (5 Cir. 1973); *White v. Gnann,* 422 F.2d 1306 (5 Cir. 1970). The Court can now reach the merits of petitioner's contentions.

## III.

■ At the outset the Sixth Amendment standard of effectiveness of counsel should be stated by this Court. The Fifth Circuit in *Williams v. Beto,* 354 F.2d 698, 704 (5 Cir. 1965), repeated the general rule that:

"  .   .   . relief from a final conviction on the ground of incompetent or ineffective counsel will be granted only when the trial was a farce, or a mockery of justice, or was shocking to the conscience of the reviewing court, or the purported representation was only perfunctory, in bad faith, a sham, a pretense, or without adequate opportunity for conference and preparation."

In 1973, the Fifth Circuit in *West v. State of Louisiana,* 478 F.2d 1026, 1033 (5 Cir. 1973), rejected the rather low standard of effectiveness required by *Williams v. Beto, supra,* and stated: "We hold that the applicable standard should be that stated in *MacKenna v. Ellis,* 5 Cir. 1960, 280 F.2d 592, 599:

" 'We interpret the right to counsel as the right to effective counsel. We interpret counsel to mean not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render *and rendering* reasonably effective assistance.' " (Emphasis by the Court)

Petitioner cites *West v. Louisiana,* incorporating the *MacKenna v. Ellis* standard, and alleges that his representation did not measure up to the *West* standard.

The Court in *West* found the following:

"From the facts of this case it is plain that West's lawyer fell far short of this

standard. West might just as well have had no lawyer. By his own admission West's attorney conferred with West for no more than an hour prior to trial, and perhaps for little more than five minutes. He conducted no investigation. At the trial he called no witnesses for the defense. After the prosecution presented its case, the defense moved for a directed verdict. When the court denied this motion, the defense immediately rested. We hold that the district court was correct in finding that West's legal representation was so inadequate as to deny his constitutional rights." *West v. Louisiana, supra,* at 1033–34.

### IV.

Petitioner claims that his conviction denied him due process and the protection of the Fifth, Sixth and Fourteenth Amendments in that his court-appointed counsel, Mr. Ray Tucker, did not effectively represent him before, during or after trial. Petitioner alleges the following eight particulars in support of his allegation of ineffective assistance of counsel: (1) Mr. Tucker waived a preliminary hearing, (2) Mr. Tucker did not know how the State could prove its case against the petitioner, (3) Mr. Tucker made no demand for a list of witnesses, (4) Mr. Tucker filed no pretrial motions for discovery or motions for any other reason, (5) Mr. Tucker did not advise and assist the petitioner in his unsworn statement to the jury and, therefore, petitioner's own testimony convicted himself, (6) Mr. Tucker failed to be familiar with the law of accomplice corroboration, (7) Mr. Tucker offered no proposed jury instructions, and (8) Mr. Tucker did not protect the appellate rights of petitioner.

Bearing in mind the *West* and *MacKenna* standards, the Court proceeds to petitioner's eight individual allegations of denial of the effective assistance of counsel.

(1) *Waiver of Preliminary Hearing.* Petitioner stated that counsel waived a preliminary hearing in his case in order to have bond set [State Habeas Corpus Transcript, page 3 ("H.C.T. 3")].

Counsel allegedly did not discuss with petitioner how valuable his rights are in a preliminary hearing [H.C.T. 4]. Mr. Tucker admitted that he did not ask for a preliminary hearing to determine what evidence the state had against Mr. Pitts [H.C.T. 72], but stated that on two, three, or four occasions he had held conversations with the arresting officer, Dan Gardner, who told Mr. Tucker "very frankly" what evidence the state had against his client [H.C.T. 58].

■■ There is no federal constitutional right to a preliminary hearing, *Siwakowski v. Beto,* 455 F.2d 915, 917 (5 Cir. 1972). Absent a showing by petitioner that counsel's waiver of the preliminary hearing caused actual prejudice to his defense, this Court cannot hold that Attorney Tucker was ineffective simply because a preliminary hearing was waived. Petitioner has failed to show the Court any such actual prejudice, therefore, this allegation is without merit.

■ (2) *Knowledge of the State's Case.* Mr. Tucker testified that he was never apprised of the fact that a co-defendant, David Summerville, was going to testify against Pitts, until Summerville got on the witness stand [H.C.T. 59]. The testimony of Summerville, the accomplice, at trial proved very damaging to petitioner. Summerville testified that he and Pitts and another, Tarner met together on the preceding night; that they were all drug addicts, had no money and were in great need of drugs. They agreed to burglarize a drug store and steal narcotics from it. Pursuant to this agreement, they left Atlanta after midnight and drove to a drug store in Hampton, Georgia, which they burglarized. Summerville testified that Pitts and Tarner went into the drug store while he waited in the car.

This Court cannot hold that Mr. Tucker was negligent in not knowing that

Summerville would decide to testify at Pitts's trial as an accomplice and later plead guilty. In Georgia there is no criminal discovery as such, and defendants have had little success in seeking to discover the State's case. *See Whitlock v. State,* 230 Ga. 700, 703–04, 198 S.E.2d 865 (1973); *Cummings v. State,* 226 Ga. 46, 172 S.E.2d 395 (1970); *Williams v. State,* 222 Ga. 208, 149 S.E.2d 449 (1966); *Blevins v. State,* 220 Ga. 720, 141 S.E.2d 426 (1965).

Attorney Tucker, as noted above, was generally aware of the State's case from having discussed it with Officer Dan Gardner [H.C.T. 58]. Tucker knew before trial that if the driver of the vehicle which was used to drive the burglars to Hampton, Georgia, appeared in Court and was able to say that he had seen Pitts and another coming out of the drug store, that "we'd be confronted with a conviction." [H.C.T. 71–72]. Clearly the substance of Summerville's testimony came as no surprise to Attorney Tucker. Tucker's cross-examination of Summerville was not ineffective. Tucker established that Summerville was a drug addict, was going through drug withdrawal symptoms on the night of the burglary, was the "lookout" for the trio and had a prior conviction for reckless driving. The Court fails to find the ineffective assistance of counsel with respect to Mr. Tucker's knowledge of the State's case.

■ (3) *List of Witnesses.* Attorney Tucker could not recall if he had demanded a list of prosecution witnesses [H.C.T. 72], and therefore the appearance of David Summerville was a surprise to him [H.C.T. 59]. However, for the reasons stated above, this Court finds no actual prejudice to the petitioner because Tucker was surprised only by the appearance of Summerville, not by the substance of his testimony.

■ (4) *Absence of Pretrial Motions.* Attorney Tucker stated that he made no pretrial motions in Pitts's case, either for discovery or any other reason [H.C.T. 72]. Since there is no formal criminal discovery in Georgia and petitioner has

failed to allege which pretrial motions his attorney failed to file and how he was actually prejudiced thereby, the petitioner's contentions are without merit.

■ (5) *Assistance in Making Unsworn Statement.* At the time, Georgia law permitted a defendant to make an unsworn statement "as he may deem proper in his defense." The statement was not made under oath nor subject to cross examination and it had "such force only as the jury may think right to give it." Ga.Code Ann. 38–415 (repealed 1973).

At his trial, Pitts made the following unsworn statement which proved to be very prejudicial to him:

"My name is Clyde Pitts and most of what David Summerville told you is true. We did meet in Atlanta and decided to come down to Hampton to commit a burglary of George Luna's Drugstore. We did leave Atlanta and come down I–75 and we went into Hampton. We drove past the drugstore and David told us where there would be a police officer, so we went there and the police officer was there and at this point, we turned around and left Hampton, came outside the city limits and we discussed whether or not we should commit this burglary, and myself and Robert Tarner decided not to go into the drugstore and we argued and at that point, I was put out of the car and there was an argument, we had a fight and I was going to go back—we were about three miles from Hampton and when I got out of the car, I started back towards Hampton, going back on foot and this was about 5 o'clock in the morning or 4 o'clock and I was going to go to my aunt's house, if I could find my way there. I didn't know where she lived, I was going to look her up and stay there because I did fear being arrested and being put back in prison because I've only been out of prison six weeks prior to this arrest. I was in prison on a drug conviction and just the fact that my being out at 5 o'clock in the morning would

put me back in prison, would be a violation of my parole, so I did not commit the burglary of this man's drugstore. I did violate my parole, which I am sure I will go back to prison for five more years, but if I'm convicted of this charge, I will be convicted of a sickness I have, not for a crime I committed, because when I came out of prison I wanted to practice a profession I have, I'm a barber, but I was refused the license because I'd got arrested for drugs. I couldn't work, so I started using drugs again and that was a violation of my parole. I went to see Dr. Hertail in Atlanta, one of the few people who have any sympathy and understanding for a man that uses drugs. He was going to try to get me on a treatment program and worked it so my parole wouldn't be violated, but it was a futuristic thing because it just couldn't be done at the time, so Summerville was right, a man that's on drugs is desperate and that's what made me decide to come down here. But other than knowing about it, I took no part in the burglary of the man's drugstore. That's all I'd like to say. [Trial Transcript (T.T.) pp. 37–38].

At his state habeas corpus hearing, Pitts alleged that Attorney Tucker put him on the witness stand against his will and told Pitts to tell the jury he was a drug addict and "ask them for a break." [H.C.T. 10]. Pitts claimed that Attorney Tucker gave him no other instructions about "what to say and not to say." [H.C.T. 10]. On cross-examination, Pitts denied that Attorney Tucker had advised him that it would be to his disadvantage to tell the jury that he had "served time" before. [H.C.T. 13]. When asked by the habeas court why he told the jury that he had "served time", Mr. Pitts replied:

"Well, Your Honor, I did what I thought was right because at that point I knew all I had to look for was sympathy because as far as I could see I didn't have any other chance, and that's what Mr. Tucker had told me to do— ask for a break and that's what I did and I thought I was pretty honest in what I said." [H.C.T. 13].

Contrary to the assertions of Pitts, Attorney Tucker testified at the state habeas corpus hearing that prior to the trial he had discussed with Pitts the making of an unsworn statement [H.C.T. 69] and cautioned him: "Now for gosh sake, if you do, don't say anything about having served time in prison before." [H.C.T. 61] On the day of the trial, after Pitts told Tucker that he still wanted to make an unsworn statement, Tucker said: "Don't say anything about going to prison." [H.C.T. 61]. Tucker testified as to his reasons for instructing Pitts so:

"I did not try to tell him what to say . . . other than don't say anything to suggest that you'd made time, because I quite obviously didn't want him to convey the idea or tell the jury that he had a prior record." [H.C.T. 61].

Tucker testified that it was Pitts's idea to make a statement [H.C.T. 60] and that Pitts never insisted that he did not wish to take the stand and make a statement [H.C.T. 61]. Tucker denied instructing Pitts to tell the jury about his drug problem in the unsworn statement prior to the verdict [H.C.T. 65, 70].

An analysis of the record below convinces this Court that the state habeas corpus court was correct in its finding ". . . that the petitioner understood his right to make an unsworn statement and knew and understood the consequences of any statement that he might make to the jury trying his case. . . ."

It appears to the Court that, following David Summerville's testimony about the adverse effect of drugs on Summerville's life, Pitts related his own drug problem and told of his recent release from prison as a tactical device in order to evoke sympathy and understanding from the jury. [H.C.T. 13]. Unfortunate though

it may be, Pitts has himself partially to blame for his conviction. He seems to have disregarded the admonition of his attorney and deliberately told the jury of his drug problem and prison record. The record below does not support the allegation that Attorney Tucker ineffectively assisted Pitts in making his unsworn statement to the jury.

(6) *Law of Accomplice Corroboration.* On appeal, the Georgia Court of Appeals held in a 5–to–4 decision that Pitts's own statement was sufficient corroboration of accomplice Summerville's testimony to sustain a conviction. *Pitts v. State,* 128 Ga.App. 434, 197 S.E.2d 495 (1973). Georgia law requires in a felony case that the testimony of an accomplice must be supported by another witness or "corroborating circumstances." Ga.Code Ann. § 38–121. Petitioner's contention is that, had he not made an unsworn statement, Summerville's testimony would have been uncorroborated and the defense would have been entitled to a directed verdict of acquittal at the close of the state's case [See H.C.T. 65–69, 71–72]. Attorney Tucker admitted to making no such motion for a directed verdict of acquittal [H.C.T. 66], and this omission is assigned as the denial of effective assistance of counsel.

The question now confronts this Court: Was the failure of counsel to move for a directed verdict, after the state rested, on the grounds that as a matter of law there was insufficient corroboration to the accomplice's testimony, an error so grave as to constitute by itself the ineffective assistance of counsel and a denial of due process? The answer is no.

During cross-examination at the state habeas corpus hearing, Attorney Tucker stated that he did not move for a directed verdict of acquittal after the state rested because he believed the state *had* produced sufficient corroboration. The following cross-examination of Mr. Tucker is illuminating:

"BY MR. ZELL

Q Did you think of moving for a directed verdict of acquittal at the close of the State's case?

A I did not do that, no sir.

Q Why not?

A I felt at that point there was insufficient evidence.

Q Of corroboration?

A Yes.

Q Summerfield testified, is that correct . . .

A That's David, isn't it, the third boy?

Q Right. Then there was the man who owned the drug store, is that correct, he testified?

A Dr. Luna, that's right.

Q And Dan Gardner testified that he found Mr. Pitts on the highway?

A That's right.

Q That's all that was said, no statement of any kind?

A That's right.

Q Now as a lawyer, you have been practicing law for 20 years or thereabouts and have been doing criminal work, I'll ask you where do you see the corroboration of an accomplice—a man is standing on the highway and another man says he is with me in a burglary— where do you see the corroboration of that? [H.C.T. 66–67].

. . . . . .

Q You said you were surprised when Summerville testified?

A Yes.

Q You said you talked to Dan Gardner, is that correct?

A Yes, sir.

Q Mr. Tucker, if you didn't think Summerville was going to testify, you were representing Tarner [the third-co-indictee], could you tell me how the State could have made out their case against Mr. Pitts?

A   Well, right now, I can't.

Q   So actually it didn't dawn on you about how they would prove the guilt of the defendant, is that what you are testifying to?

A   There was in the statement with Mr. Gardner—I was told that there was a vehicle parked out front and as they, I believe they were—the vehicle raced its motor or something and pulled up and parked and they left. I did not know at that time and actually didn't know until they started trying him whether or not the driver of that vehicle would appear. I did know that if the driver of that vehicle appeared in Court and was able to say the same thing that Tarner had told me, that he had seen the two of them coming out of the drug store, that we'd be confronted with a conviction."

The respondent in this case contends that the testimony of Summerville was corroborated independently of Pitts's unsworn statement and that a motion for a directed verdict of acquittal at the close of the State's case would have been futile anyway.

■   It is not the province of a federal habeas corpus court to review allegations of insufficiency of the evidence, *Young v. State of Alabama*, 443 F.2d 854 (5 Cir. 1971); *Hopkins v. Wainwright*, 458 F.2d 393 (5 Cir. 1972); *Fulford v. Dutton*, 380 F.2d 16 (5 Cir. 1972), unless the conviction is so devoid of evidentiary support as to raise a due process issue; *Johnson v. Turner*, 429 F.2d 1152 (10 Cir. 1970).

■   Since the trial transcript is hardly devoid of evidence supporting Pitts's conviction, the Court finds no due process issue here. The issue of the sufficiency of the corroboration supporting Pitts's conviction is a question of Georgia law and not cognizable in this federal habeas corpus proceeding, where only claims of federal law violations may be heard. 28 U.S.C. § 2254(a). *Johnson v. Turner, supra*. Therefore this Court is loath to speculate whether there would have been enough corroboration under Georgia law to convict Pitts with or without his unsworn statement. Neither will this Court speculate as to whether the Georgia Court of Appeals would have affirmed Pitts's conviction with or without Attorney Tucker's motion for directed verdict of acquittal.

Rather the only cognizable issue is whether Attorney Tucker's failure to make the motion constituted ineffective assistance of counsel. Since the record shows that he believed the state had brought forth at trial sufficient corroborating evidence, this Court holds that Attorney Tucker was "rendering" if not "errorless counsel," then "reasonably effective assistance" within the standards of *MacKenna v. Ellis, supra,* and *West v. State of Louisiana, supra.*

■   While the Court may sympathize with litigants who do not receive errorless counsel, the Constitution guarantees neither successful counsel, nor the best counsel available, nor counsel free from tactical errors or errors of judgment. See *Odom v. United States*, 377 F.2d 853, 858 (5 Cir. 1967). Accordingly, this Court finds no violation of petitioner's Sixth Amendment rights by the failure of his counsel to move for a directed verdict of acquittal at the close of the State's case.

■   (7) *Proposed Jury Instructions*. For the reasons stated above, any allegation by petitioner that he was denied effective assistance of counsel by Attorney Tucker's failure to submit proposed jury instructions is without merit. A tactical error or error of judgment of this sort, if any there be, is not of the dimension of a constitutional denial of assistance of counsel.

■   (8) *Appellate Advice*. Any allegation by petitioner concerning ineffective assistance of counsel on appeal is without merit. Petitioner testified that

Attorney Tucker turned over letters to the petitioner after he had requested them. [H.C.T. 11]. Petitioner was represented by another attorney, Mr. Glenn Zell, attorney of record in this Court, in his unsuccessful appeal to the Georgia Court of Appeals. *Pitts v. State, supra.*

## V.

While hindsight reveals that petitioner might have been better served had he declined the opportunity to make an unsworn statement before the jury and had Attorney Tucker moved for a directed verdict of acquittal at the close of the State's case, this Court finds that petitioner's allegations of ineffective assistance of counsel, when judged by the *MacKenna* and *West* standards are not constitutional violations deserving of federal habeas corpus relief.

As the Supreme Court of Georgia noted, the record reveals that petitioner's appointed trial counsel, Mr. Tucker, is a "graduate of an accredited law school, a general practitioner of 18 years experience at the Georgia Bar, whose practice consists, to the extent of 25-percent to 40-percent, of criminal law experience and that he enjoys broad public contact and service." 231 Ga. 639–40, 203 S.E. 2d 517. After a close examination and analysis of the record herein, the Court concurs with the following findings and conclusions of the State habeas corpus court:

> " . . . That said petitioner was represented by competent counsel . . who is found to be a qualified attorney. . . . [and that T]he court further finds that none of the petitioner's constitutional rights were violated, that his conviction was lawful."

Accordingly, the petition for habeas corpus relief is Denied and respondent's motion for summary judgment is Granted.