**UNITED STATES of America,
Appellee,**

v.

**Robin YANISHEFSKY, Defendant-Appellant.**

**No. 1145, Docket 74–1117.**

United States Court of Appeals,
Second Circuit.

Argued June 27, 1974.

Decided July 30, 1974.

---

841(a)(1), 841(b)(1)(A), and 18 U.S.C. § 1791. After a finding of guilt on both counts, Judge Wyatt suspended imposition of sentence and placed appellant on probation for two years.

The facts established at the trial were substantially the following. The appellant visited the jail in the afternoon of October 31, 1973, to visit Roosevelt Bell, an inmate incarcerated for violations of the Mann Act, listing herself as his wife, although not married to him. The appellant, herself a smoker of Kool cigarettes, was observed by Michael Garone, a correction officer, and Arthur Gantt, an inmate, to toss a package of Kool cigarettes through a hole in the plexiglass wall of the bulletin board room. Bell had been previously observed peeking into this room. The package was immediately retrieved by Officer Garone and later found to contain five cigarettes, five glassine envelopes filled with heroin and four tinfoil packets of cocaine. She was followed out of the prison by Officer Garone and another prison official and was seen departing by taxicab. She was arrested two days later.

Upon this appeal it is claimed that Robin Yanishefsky had inadequate legal representation and that her conviction should be set aside on this ground.

We are constrained to reject this contention. This allegation is based on six grounds: (1) that her attorney should have requested a suppression hearing with respect to the identification testimony of Garone and Gantt which allegedly "was indisputably the product of an impermissibly suggestive" pre-trial photographic display; (2) that her attorney should have sought a suppression hearing with respect to appellant's post-arrest statements allegedly taken in violation of her Fifth and Sixth Amendment rights; (3) that her attorney (a) failed to call as a witness one Lucy Wilson, Bell's sister with whom appellant was living, who accompanied the appellant on her visit to West Street on October 31,

Michael A. Young, New York City (The Legal Aid Society, William J. Gallagher, New York City, on the brief), for defendant-appellant.

Steven A. Schatten, Asst. U. S. Atty. (Paul J. Curran, U. S. Atty. S. D. N. Y., John D. Gordan III, Asst. U. S. Atty., on the brief), for appellee.

Before MOORE and FEINBERG, Circuit Judges, and PALMIERI, District Judge.[*]

PALMIERI, District Judge:

Robin Yanishefsky was convicted of the unlawful possession of heroin and cocaine and of introducing and attempting to introduce these narcotic substances into the Federal Detention Headquarters at West Street, Manhattan, in violation of 21 U.S.C. §§ 812,

[*] Of the United States District Court for the Southern District of New York, sitting by designation.

1973, and who allegedly would have given testimony exonerating appellant, and (b) that her attorney should have located and interviewed all one hundred of the visitors to West Street on that day, and that he should have requested a postponement once he received the visitors list at trial; (4) that he should have requested a court order directing the West Street officials to allow him to inspect the scene of the crime; (5) that he conceded controvertible facts, and (6) that he made incomprehensive arguments "which served only to confuse the Court" and which seemed to "concede her guilt."

We deal with these *seriatim*:

(1) Garone and Gantt each were shown a spread of six photographs. Garone picked Yanishefsky's picture and we deal here only with his identification since it served as the primary basis for Judge Wyatt's decision. Appellant suggests that the spread was impermissibly suggestive in that two were of women with black or dark brown hair, two (but not Yanishefsky's) had names written on the front and the others had names on the back, only two were of blond women, and only one (Yanishefsky's) portrayed "someone with the Slavic features implicit in the name Yanishefsky." Notably, on cross-examination Garone repeatedly denied seeing any names or height scales on the photographs. Moreover, there is no implication in the record that his selection resulted from suggestion; indeed, he testified that "[a]ll I was looking for was the face that I remembered. . . ."

■ Whether the photographs used were "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification," Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968); United States v. Evans, 484 F.2d 1178, 1181–1187 (2d Cir. 1973), so that "allowing the in-court identification would be a denial of due process" turns on the "totality of the circumstances." United States ex rel. Phipps v. Follette, 428 F.2d 912, 914–915 (2d Cir.), cert.

denied, 400 U.S. 908, 91 S.Ct. 151, 27 L.Ed.2d 146 (1970); Neil v. Biggers, 409 U.S. 188, 199, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). Having viewed the display ourselves, we doubt that it was impermissibly suggestive; we nevertheless assume *arguendo* that it was and turn to its effect on the in-court identification. Appellant contends that there was no independent basis for Garone's in-court identification of Yanishefsky. She argues that Garone had only a "fleeting glance" of a "side face as she was going out," and that he could only describe the woman as "tall," "blond" and "white."

In response to the question of why Garone had selected Yanishefsky's photograph, appellant quotes the witness's statement in the record: "I was looking for a tall blond woman and the *nearest* or the one was 6–A [the photograph of appellant], sir." Appellant offers this as evidence that Garone was not making a direct identification of Yanishefsky as the woman that he saw on the day of the crime. But such argumentation is obviated by an examination of the record. The quoted response was not directed to questions purporting to elicit whether the picture selected was "nearest" to that of the person seen or whether it was actually one of the person herself, but the questions clearly and unequivocally pertained to whether Garone had seen names or height scales on the pictures and his response was that he had not because that was not what he was looking for.

Appellant's "fleeting" "side face" view argument also fails to convince us. While it is true that Garone said that he identified appellant "through a side face as she was going out," there is no evidence in the record indicating that his view of her was inadequate for him to formulate a clear visual and mental impression of her. United States v. Evans, *supra*, 484 F.2d 1181–1182. He identified her in court without hesitation as the person who threw the package of Kools into the bulletin board room. On direct examination he said that she was readily distinguishable from the two

black women who were with her because she was the only white person of the three, and that "she was outstanding in height and characteristics, blond." This statement was a reconfirmation of Garone's response to a preceding question: Judge Wyatt—"[T]here was no question as to who had the cigarette package, it was this girl?" Garone—"That is right." In sum, there is no support in the record for appellant's assertion that Garone's in-court identification was not based on his independent recollection of the events.

■ Upon a careful examination of the record and on the basis of the particular facts of this case, where Garone was within a few feet of the perpetrator at the moment of the crime and he was cross-examined sufficiently to bring the dangers of misidentification resulting from the photographic display to the court's attention, Simmons v. United States, *supra,* 390 U.S. at 384, 88 S.Ct. 967, 19 L.Ed.2d 1247, we conclude that Garone's in-court identification of the appellant was based on his independent recollection of the events and that he was not relying on the photograph which he selected at the arguably impermissibly suggestive display. United States ex rel. Gonzalez v. Zelker, 477 F.2d 797, 801 (2d Cir. 1973).

(2) Appellant argues that her attorney should have sought to suppress her post-arrest statements to FBI Agents Brotman and Corliss which included admissions that she had been at West Street on October 31, 1973, that she smoked Kool cigarettes and that she probably had a package of Kool cigarettes with her during the visit to West Street. Upon appellant's arrest by FBI agents, a Kool package was found in her pocketbook. (Although appellant does not press this, she also admitted that she falsely listed herself as Bell's wife on the visitor's form.) The first two of these three admissions were established by independent evidence at the trial: a prison control room visiting card bearing that date and a visitor's card from West Street bearing her signature and

the date were introduced, and Agent Brotman testified that during their interview she specifically requested a pack of Kool cigarettes. She alleges here, for the first time, that prior to the trial she had advised her attorney that at the beginning of the interrogation she had requested and was denied counsel.

Thus, all that is presented is appellant's bald assertion that she requested and was denied counsel, as opposed to the uncontradicted sworn testimony of Brotman that she was advised of her rights and that she refused to sign the waiver form but that she orally consented to speak with the agents. In fact, he testified that she had not asked for counsel. It is also noteworthy that she made virtually identical admissions to the United States Attorney's Office after again being advised of her rights.

■ Since appellant does not deny that the FBI agents advised her of her right to counsel, nor does she allege that her statements to them were in any way involuntary or coerced, there is no basis in the record for concluding that her admissions would have been inadmissible despite her post-trial assertion that she requested counsel. It follows that any motion to suppress would have been unsuccessful and that consequently the failure to make the motion cannot be deemed to be prejudicial to the appellant. *See* Massimo v. United States, 463 F.2d 1171, 1173 (2d Cir. 1972), cert. denied, 409 U.S. 1117, 93 S.Ct. 920, 34 L.Ed.2d 700 (1973).

■ (3) Appellant urges that counsel should have called Lucy Wilson as a defense witness. It is conceded that counsel knew about Wilson, and it therefore cannot be said that his decision not to call her was not "informed, deliberate and rational." United States v. Benn, 155 U.S.App.D.C. 180, 476 F.2d 1127, 1134, 1136–1137 (1973). Simply put, appellant argues that the course taken demonstrated incompetence, and the Government counters by suggesting that it "seems more than likely that defense counsel representing the 'wife' of a Mann Act violator showed sagacity,

rather than ineffectiveness, in declining to call the 'sister' of the Mann Act violator as a defense witness at a bench trial." The selection of witnesses is clearly a matter of trial strategy, United States ex rel. Walker v. Henderson, 492 F.2d 1311, 1314 (2d Cir. 1974); United States v. Matalon, 445 F.2d 1215, 1219 (2d Cir.), cert. denied, 404 U.S. 853, 92 S.Ct. 92, 30 L.Ed.2d 93 (1971), which the courts are extremely reluctant to second-guess. United States v. Garguilo, 324 F.2d 795, 797 (2d Cir. 1963). We see no reason to do so here.

■ Similarly, there is no merit to appellant's contention that counsel should have interviewed all one hundred visitors to West Street on October 31, 1973. It is true that upon failing to get the list of visitors through informal discovery prior to trial, counsel waited until the first morning of trial before moving to obtain the information. But aside from the utter lack of practicality of appellant's suggestion the record clearly demonstrates that the only visitors who could have viewed the appellant during the alleged crime were those who were accompanying her in the enclosed, narrow hallway where it took place, and appellant does not deny that those two individuals were known by her. Appellant's argument that this investigation was essential because counsel might have been able "to locate someone who might have observed something relating to the incident and who might be able to give testimony exculpatory to the defendant" clearly does not provide a basis for the conclusion that the failure to do so amounted to a failure of constitutional magnitude. *Compare* United States ex rel. Marcelin v. Mancusi, 462 F.2d 36,

43–45 (2d Cir. 1972), cert. denied, 410 U.S. 917, 93 S.Ct. 977, 35 L.Ed.2d 279 (1973). Nor does this demonstrate that as a result she was exposed to "a reasonable possibility of prejudice in fact." United States v. Moher, 445 F.2d 584, 585 (2d Cir. 1971) *quoting* McGill v. United States, 121 U.S.App.D.C. 179, 348 F.2d 791, 793 (1965); United States ex rel. Marcelin v. Mancusi, *supra*, 462 F.2d at 47–48 (Kaufman, J., dissenting).[1]

■ (4) Appellant argues that counsel was derelict in not arranging to investigate the physical scene of the crime at West Street. Appellant makes absolutely no showing of prejudice in this regard. Indeed, throughout the trial a diagram was used which had been furnished by defense counsel himself and he was diligent in exacting precise descriptions of every detail so as to leave no room for ambiguity or confusion. Moreover, despite counsel's request to the court subsequent to the trial that he be allowed to visit the area in order to satisfy his professional curiosity, it is apparent from the record that prior to this case he had occasion to view the area from nearby and that in at least two prior instances he had observed and overheard activities therein. In addition, counsel demonstrated intimate familiarity with its layout and the prison procedures in his opening statement, and he had conferred with prison guards at West Street about these matters. Finally, pictures of the entire area were introduced at the trial. This argument is therefore unpersuasive.

■ (5) Appellant next argues that counsel's inadequacy was demonstrated

---

1. The Supreme Court has said, in a different context: "The principal value of counsel to the accused in a criminal prosecution often does not lie in counsel's ability to recite a list of possible defenses in the abstract, nor in his ability, if time permitted, to amass a large quantum of factual data and inform the defendant of it. Counsel's concern is the faithful representation of the interest of his client, and such representation frequently involves highly practical considerations as well as specialized knowledge of the law. Often the interests of the accused are not advanced by challenges that would only delay the inevitable date of prosecution, see Brady v. United States supra [397 U.S. 742, 751–752, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970)], or by contesting all guilt, see Santobello v. New York, 404 U.S. 257 [92 S.Ct. 495, 30 L.Ed.2d 427] (1971)." Tollett v. Henderson, 411 U.S. 258, 267–268, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973).

by certain concessions that he made as to "vital facts on which the Government's proof was either controvertible or non-existent."

Appellant argues that in his opening statement counsel provided the court with a missing link in the Government's case by providing a reason why a visitor might drop a package into a room from which prisoners are ordinarily excluded —the statement being that it was his understanding that prisoners sometimes made unauthorized entries to wave a last goodbye to existing visitors. The force of this argument is vitiated by the fact that Judge Wyatt did not consider this statement in the light in which it is cast by appellant. This is clear from the fact that, as appellant concedes, Judge Wyatt repeatedly emphasized that he could not understand why the defendant would commit the act under the circumstances.

Appellant also argues that counsel, in cross-examining Gantt, assumed that Gantt saw Yanishefsky drop the pack of Kools into the room where he was standing when, in fact, Gantt had testified that he only saw the white woman move her hands and that he next saw the pack on the floor. Since Judge Wyatt based his decision on Garone's testimony and only regarded Gantt's as corroborative, it is highly dubious that this nicety of phraseology amounted to a "concession of a factual issue" in the context of a nonjury trial.

Appellant alleges similar incompetence in that counsel conceded that appellant was at West Street on October 31, 1973, and in that he entered into a stipulation that the warden had no prior knowledge that petitioner would attempt to introduce narcotics into West Street. Both of these contentions are frivolous.

■ (6) Finally, appellant contends that counsel's statements confused the judge and tacitly conceded her guilt. We are unwilling to assume that Judge Wyatt could be "confused" by counsel, particularly at a simple trial such as this, or that he would be influenced by syntax which only arguably implies guilt. Indeed, Judge Wyatt expressly rejected appellant's contention that her attorney had conceded her guilt by indicating his belief of certain aspects of a government witness's testimony. Contrary to appellant's allegations, it is clear that Judge Wyatt understood her attorney's arguments far better than she did herself, and it is equally clear that Judge Wyatt, as a careful trier of the facts, cast counsel's arguments in the light most favorable to appellant.

■ The current standard of ineffective assistance of counsel in this circuit is that in order to be of constitutional dimensions the representation be so "woefully inadequate 'as to shock the conscience of the Court and make the proceedings a farce and mockery of justice.' " United States v. Currier, 405 F. 2d 1039, 1043 (2d Cir.), cert. denied, 395 U.S. 914, 89 S.Ct. 1761, 23 L.Ed.2d 228 (1969), *quoting* United States v. Wight, 176 F.2d 376, 379 (2d Cir. 1949), cert. denied, 338 U.S. 950, 70 S.Ct. 478, 94 L.Ed. 586 (1950); *see also* United States ex rel. Walker v. Henderson, *supra*, 492 F.2d at 1312; United States v. Sanchez, 483 F.2d 1052, 1057 (2d Cir. 1973).[2]

"Errorless counsel is not required, and before we may vacate a conviction there must be a 'total failure to present the cause of the accused in any fundamental respect.' " United States v. Garguilo, supra, 324 F.2d at 796, quoting Brubaker v. Dickson, 310 F.2d 30, 39 (9th Cir.

---

2. Apparently recognizing the weakness of her case under this standard, appellant urges that we adopt the less stringent standards of other circuits that a defendant is entitled to "counsel reasonably likely to render and rendering reasonably effective assistance," Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974), or that an accused be afforded counsel of "normal competency."

Moore v. United States, 432 F.2d 730, 737 (3d Cir. 1970) (en banc). *See also* West v. Louisiana, 478 F.2d 1026, 1032–1034 (5th Cir. 1973) ; United States v. DeCoster, 159 U.S.App.D.C. 326, 487 F.2d 1197, 1201–1204 (D.C.Cir. 1973). Bruce v. United States, 126 U.S.App.D.C. 336, 379 F.2d 113, 116–117 (1967). We decline this invitation.

1962), cert. denied, 372 U.S. 978, 83 S. Ct. 1110, 10 L.Ed.2d 143 (1963). Upon careful examination of the record reflecting the character of the "resultant proceedings," United States v. Wight, *supra*, 176 F.2d at 379, and of appellant's specific allegations, we find that taken individually and collectively, United States v. Sanchez, *supra*, 483 F. 2d at 1058, they fail to meet the "stringent standards to be met to show inadequacy of counsel," United States v. Maxey, 498 F.2d 474, 483 (2d Cir. 1974); United States ex rel. Marcelin v. Mancusi, *supra*, 462 F.2d at 42, and that Judge Wyatt was not clearly erroneous in rejecting this contention when it was brought before him at the time of sentence. *Cf.* United States v. Pfingst, 490 F.2d 262, 273 (2d Cir. 1973).

The experienced court made a careful evaluation of the claims of inadequate legal representation raised by letters from appellant to the court prior to sentencing and concluded that they were baseless. Indeed, Judge Wyatt said:

"The suggestion is that assigned counsel did not competently represent the defendant and on the basis of my own observations, I find this to be untrue. Counsel did a perfectly good job."

We cannot conclude on this record that the legal representation of the appellant was constitutionally defective.

To be sure, appellant has a fall-back position. As an alternative to reversing for a new trial, she asks us to remand to the district court for a hearing to amplify the record on this issue. But while in some cases such a course might be advisable, see United States v. DeCoster, *supra*, note 2, 487 F.2d at 1204–1205; Garton v. Swenson, 497 F.2d 1137 (8th Cir. 1974), in this instance we believe it would serve no useful purpose. In sum, the arguments based upon a post-trial reappraisal of tactics and decisions the defense counsel might have chosen to adopt do not persuade us that the appellant can validly question her conviction on this ground.

Affirmed.