Thomas LiPUMA, Petitioner-Appellee,

v.

COMMISSIONER, DEPARTMENT OF CORRECTIONS, STATE OF NEW YORK, et al., Respondents-Appellants.

No. 988, Docket 77–2006.

United States Court of Appeals, Second Circuit.

Argued April 12, 1977.

Decided July 11, 1977.

Ceritorari Denied Oct. 3, 1977.

See 98 S.Ct. 189.

Eileen Shapiro, New York City (Louis J. Lefkowitz, Atty. Gen., State of New York, Samuel A. Hirshowitz, First Asst. Atty. Gen., and Ralph McMurry, Asst. Atty. Gen., New York City, on the brief), for respondents-appellants.

Nancy Rosner, New York City, for petitioner-appellee.

Before CLARK, Associate Justice,* and ANDERSON and MULLIGAN, Circuit Judges.

ROBERT P. ANDERSON, Circuit Judge:

This is an appeal from a judgment entered September 24, 1976 vacating petitioner Thomas LiPuma's New York state conviction for a second degree burglary and petit larceny and granting a writ of habeas corpus pursuant to 28 U.S.C. § 2254 unless the State commenced proceedings to retry the petitioner within 60 days of the judgment. Subsequently the district court on December 17, 1976 amended the judgment to provide instead that the writ of habeas corpus would issue within 60 days unless the State afforded petitioner an opportunity to make a motion to suppress certain evidence. *United States ex rel. Rosner v. Commissioner,* 421 F.Supp. 781 (S.D.N.Y. 1976) (hereinafter cited as *Rosner*).

On the evening of January 10, 1972, two robberies took place at New York's Berkshire Hotel. Mr. and Mrs. William Robinson returned to their room to find their two fur coats, a pair of gold cuff links and other items missing. On the floor above the Robinsons, Mr. and Mrs. Raymond Geibel returned from a stroll to find an unknown individual sitting at the desk in the sitting room of their suite. Mrs. Geibel asked to stranger to identify himself, and he replied that he was a hotel security officer investigating several reported burglaries in the hotel. Two more strangers next emerged from the Geibels' bedroom and likewise

---

\* Pursuant to § 0.14 of the Rules of this Court, this appeal is being determined by Judges Anderson and Mulligan who are in agreement on this opinion.

claimed to be hotel security men. Mr. Geibel demanded identification of the three, and they answered that they did not have any with them but that they would get it and return; they then departed. The Geibels noted that their rooms were in disarray and that a small pillbox, worth approximately five dollars and a small purse containing some change was missing.

The Geibels and the Robinsons immediately reported the incidents, and the police were summoned. They arrived within a very few minutes. The hotel's entrances were sealed and its hallways and stairwells were checked, but the intruders were not found. All of the guest rooms at the Berkshire, except those on the sixth floor, were leased to long term tenants. Only the rooms on the sixth floor were used for transients; and at the time of the burglaries, only three of these transient rooms had been rented. In examining the hotel register, the police discovered that Rooms 612 and 613 were occupied by persons who had recently registered. Three officers went to Room 613. Whom and what the officers discovered in Room 613 were largely undisputed, that is to say, three men, Doyle Raimondo and the appellant LiPuma, and the Robinsons' furs, and the Geibels' pillbox. The manner and means by which those discoveries were made, however, have, for the purposes of this case, given rise to an issue of credibility as to the assertion by the police that their entry into Berkshire's Room 613 was the the consent of Doyle, the occupant or without his consent, which in turn raises the issue of a Fourth Amendment violation. There is also a question whether LiPuma's Sixth Amendment right to "the Assistance of Counsel for his defence" was violated because his trial attorney failed to make a timely motion for suppression.

The three policemen sent to investigate Room 613, testified at petitioner's state court trial before a judge and jury that they had knocked at the door and announced themselves as police. The jury was warranted in so finding and also in determining that James Doyle, who was also charged with the burglaries along with LiPuma and one Peter Raimondo, came to the closed door, where Officer Donnelly told him that the police wanted to make sure he was all right because there "had been trouble in the building . . . ." After a minute, Doyle let them in.[1] As Officer Donnelly spoke with Doyle, Officer Powers went past him into the room without objection or protest. Donnelly then followed. He noted that Doyle kept looking nervously toward the closet, the door of which Donnelly opened and saw evidence that someone was inside. The policeman then drew his gun and ordered whoever was inside the closet to come out. LiPuma then emerged, followed by Raimondo. A search of Raimondo's pockets disclosed the Geibels' pillbox, which was later introduced at trial against LiPuma. LiPuma, Doyle and Raimondo were then arrested. On the night of the arrest, Mrs. Geibel identified LiPuma as the man she had encountered sitting at the desk upon entering her Suite.

The three defendants were later indicted on two counts each of second degree burglary, petit and grand larceny and two counts of criminal possession of stolen property.

Doyle's retained counsel, Attorney Hochheiser, initially represented LiPuma as well, but in May of 1972, LiPuma retained Michael Coiro as his own separate counsel, who was assisted by his partner, Attorney Salvatore Quagliata, who prepared papers and handled pre-trial motions. After Coiro and Quagliata entered the case on LiPuma's behalf, Doyle's counsel, Attorney Hochheiser advised them that he had filed, on Doyle's behalf, a motion to suppress all evidence derived from the January 10, 1972 search of Room 613 at the Berkshire where

---

1. One of the other policemen on the scene, Officer Green, testified that Doyle had invited the three policemen to check the room "for security purposes," but not to search. Doyle, who had pled guilty, testified at the trial in LiPuma's behalf and said that, after telling Raimondo and LiPuma to hide in the closet, he, Doyle, opened the door and, after he was rudely pushed aside by the police, they rushed in.

LiPuma and Raimondo had been discovered in the closet, as well as where the physical evidence had been found.

Attorney Quagliata, in connection with his assigned duty to deal with pre-trial motions for LiPuma in the State court trial, discussed with Attorney Hochheiser, still representing Doyle, both a motion to suppress and a motion for a bill of particulars. They both testified at the subsequent United States District Court habeas hearing to an informal agreement before the state court trial, for a kind of division of labor, pursuant to which Attorney Hochheiser understood that Quagliata, on behalf of LiPuma, joined in Hochheiser's motion to suppress and Attorney Hochheiser, on behalf of Doyle, joined in Quagliata's motion for a bill of particulars. When this subject was examined by Justice Fraiman in the midst of the State court trial, Hochheiser testified generally, i. e., without a specifically detailed recollection,

"it had been my understanding over the period of that year, or whatever the pendency of that litigation was, that Judge Leff, who had been the previous judge in the case, and the prosecutor, Tom Andrews, and myself and Mr. Quagliata had all understood there was a time when Mr. Quagliata had told Judge Leff that he joined in my motion to suppress. I certainly understood I was the beneficiary of Mr. Quagliata's bills of particulars."

Quagliata understood this to constitute an oral stipulation which for the court and the parties, including the State, brought LiPuma under Hochheiser's motion to suppress. He also understood and believed that it was on the record. He told his senior partner, Attorney Coiro, about it and they both relied upon this understanding in seeking to have LiPuma's motion to suppress heard and ruled upon by Justice Fraiman in mid-trial of the case in the Supreme Court of New York. Due to the passage of time between the happenings testified to by Attorney Hochheiser and the actual trial in the State court, Andrews, the former prosecutor, no longer had any recollection of the

matter one way or the other. Moreover an extended search failed to disclose that the oral stipulation was at any time made a part of the record. Attorney Hochheiser's motion to suppress on behalf of Doyle disappeared from the case on May 3, 1973, when Doyle pleaded guilty to the first count, charging second degree burglary.

The case against LiPuma continued and on May 16, 1972, Quagliata appeared before the New York Supreme Court and stated that "it would appear that there are some motions that lie." LiPuma was advised in July or August of 1972 by his attorneys that a motion to suppress had been filed on his behalf. A private investigator was hired at the joint expense of LiPuma and his co-defendants, with at least one of his duties being an investigation into the circumstances of the policemen's entry into Room 613 on the evening in question. In short, it appeared through the summer of 1972 and into 1973 that the case was being readied for trial. Immediately preceding the actual commencement of the trial, the state trial judge, Justice Fraiman, specifically asked Attorney Coiro if "there was any outstanding motion he required:" and Attorney Coiro advised the court "that there was not."

LiPuma was placed on trial on May 2, 1974, but as of that date no formal suppression motion had, in fact, been filed on his behalf. The prosecution presented the testimony of Mrs. Geibel, who had identified LiPuma in a police line-up on the night of the robbery. She also made a second identification of LiPuma in court. The State's case included the testimony of Officer Donnelly, one of the three policemen assigned to investigate Room 613 and that of Officer Powers, also part of the same detail. After the completion of Officer Powers' testimony and on the second day of trial, LiPuma's counsel, Attorney Coiro, inquired of the trial judge as to his "request for a motion to suppress . . . ." Coiro explained that in a pre-trial proceeding before a different judge, "the People consented to a motion to suppress." After extensive side-bar discussions with counsel over the course of five

days, the trial judge finally denied Coiro's motion to suppress on May 8, 1974, on the ground that § 710.40 of the New York Criminal Procedure Law (NYCPL)[2] precluded the mid-trial consideration of the motion. The trial proceeded and LiPuma was convicted on jury verdicts of guilty on two of the three counts, that is, those relating to the Geibel burglary. The counts based upon the Robinson burglary were ultimately dismissed for insufficient evidence of connection with the accused. He was sentenced to five years imprisonment.

On the day of sentencing, LiPuma, who had discharged Coiro and his partner as his attorneys, moved, through new counsel, for a new trial on three grounds: (1) that he had lost the right to make a meritorious motion to suppress through the gross dereliction of his trial counsel; (2) that the evidence relating to the Robinson burglary, which had been struck from the evidence because of the dismissal of the counts relating to this robbery had nonetheless prejudiced him; and (3) that the Assistant District Attorney's summation had been improperly prejudicial. He also claimed that the court's instructions were not sufficient to remove the prejudice caused by the last two points. The state trial court held that petitioner had been adequately represented by counsel. The motion for a new trial was denied without a hearing and the Appellate Division affirmed the conviction without opinion. The New York Court of Appeals denied leave to appeal.

The instant petition for federal habeas corpus followed. The district judge held an evidentiary hearing on this petition on April 14, 1976, at which Hochheiser (Doyle's former attorney and LiPuma's first attorney) as well as Quagliata and Coiro, partners, who were LiPuma's second attorneys, testified. While the court had before it the trial transcript of LiPuma's State trial, neither Doyle nor LiPuma testified at the habeas corpus hearing.

The district court ruled that neither petitioner's claim that he had been improperly prejudiced by the prosecutor's closing statement nor the claim that evidence as to the Robinson burglary had prejudiced his cause was supported by the trial court record. *Rosner, supra,* 421 F.Supp. 781, 782 *et seq.* As to the main issue before it, the claim of ineffective assistance of counsel because LiPuma's suppression motion had not been timely filed and pressed before the State trial court, the district court concluded that the suppression motion had been simply forgotten by Attorney Coiro, *Rosner, supra,* 421 F.Supp. at 788, and it thereby contradicted the State's suggestion that the motion to suppress was not made simply because it had little chance of success.

From his factual finding, the district court then proceeded to determine whether, under the law of this Circuit, counsel's performance was so "woefully inadequate 'as to shock the conscience of the Court and make the proceedings a farce and a mockery of justice.'", *United States v. Currier,* 405 F.2d 1039, 1043 (2d Cir.), *cert. denied,* 395 U.S. 914, 89 S.Ct. 1761, 23 L.Ed.2d 228 (1969), even though "'[e]rrorless counsel is not required.'" *United States v. Matalon,* 445 F.2d 1215, 1218–19 (2d Cir.), *cert. denied,* 404 U.S. 853, 92 S.Ct. 92, 30 L.Ed.2d 93 (1971). The district judge concluded that the charge of ineffective assistance of counsel was "fully supported by the peculiar facts disclosed by the record at bar," *Rosner, supra,* 421 F.Supp. at 792, because LiPuma's suppression motion would not "have been of obvious futility" and, had the motion been successful, the only evidence against LiPuma was Mrs. Geibel's identification testimony, which the district judge characterized as "dubious." *Rosner, supra,* 421 F.Supp. at 791.

On this appeal, the State argues first that petitioner waived his claim for purposes of

---

2. At the time of LiPuma's trial, NYCPL § 710.40 provided in pertinent part:

"1. A motion to suppress evidence must be made . . . with reasonable diligence prior to trial.

2. The motion may be made for the first time during trial when, owing to previous unawareness of facts constituting the basis thereof or to other factors, the defendant did not have reasonable opportunity to make the motion before trial . . . ."

federal habeas corpus review, citing *United States ex rel. Tarallo v. LaVallee,* 433 F.2d 4 (2d Cir. 1970), *cert. denied,* 403 U.S. 919, 91 S.Ct. 2235, 29 L.Ed.2d 697 (1971), that the Supreme Court's recent decision in *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), forecloses review here inasmuch as petitioner had an opportunity for full and fair litigation, 428 U.S. at 494, 96 S.Ct. 3037, to press his constitutional claims before the State courts and that LiPuma was not in any event deprived of the effective assistance of counsel under this Circuit's stringent standards for reviewing such claims. Petitioner counters with the arguments that as to waiver, the State has confused the concepts of intentional bypass of a state forum in the presentation of a federal claim, as expressed in *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), with the opportunity for full and fair litigation doctrine of *Stone v. Powell, supra,* and that as to effective assistance of counsel, the district court properly applied this Circuit's tests for evaluating such claims, citing *Mosher v. LaVallee,* 491 F.2d 1346 (2d Cir.), *cert. denied,* 416 U.S. 906, 94 S.Ct. 1611, 40 L.Ed.2d 111 (1974); *United States v. Sanchez,* 483 F.2d 1052 (2d Cir. 1973), *cert. denied,* 415 U.S. 991, 94 S.Ct. 1590, 39 L.Ed.2d 888 (1974), and *United States ex rel. Maselli v. Reincke,* 383 F.2d 129 (2d Cir. 1967).

With regard to the State's contention that petitioner has "waived" his Fourth Amendment claim for purposes of federal habeas corpus review because of his failure to comply with NYCPL § 710.40, requiring that motions to suppress evidence be made prior to trial, it may be noted that the only exceptions recognized by the statute, in effect at the time of LiPuma's trial, to permit the later in-trial consideration of such motions, were in circumstances where the defendant did not have a reasonable opportunity to make the motion prior to trial "owing to previous unawareness of facts constituting the basis thereof or to other factors . . . .," and in some limited situations not relevant here. The State cites *United States ex rel. Tarallo v. LaVallee, supra,* in support of its waiver theory and we agree

that this case, decided under the NYCPL § 710.40's predecessor statute, is applicable here.

*Tarallo* was likewise a habeas corpus proceeding stemming from a robbery conviction, where the search warrant and supporting affidavit which petitioner attacked had been on file with the State court five months prior to trial, but no pre-trial motion to suppress was made with respect to any evidence seized. The petitioner had failed to object on Fourth and Fourteenth Amendment grounds when the jewelry from the robbery had been introduced in evidence, and only objected on illegal search and seizure grounds after the State's evidence was already in. "At no point did he [Tarallo] request a factual hearing or did he contend that the warrant was issued without probable cause." 433 F.2d at 7. On the above facts, this court held in *Tarallo* that failure to comply with § 813–d of the New York Code of Criminal Procedure (the predecessor statute of NYCPL § 710.40 applicable here) prohibited raising his Fourth and Fourteenth Amendment claims on a federal habeas corpus petition. 433 F.2d at 8. In the present case, petitioner likewise failed to comply with the State statute requiring him to make his motion to suppress prior to trial.

Petitioner attempts factually to distinguish *Tarallo* from his situation on the ground that he, unlike Tarallo, actually objected on constitutional grounds during trial to the introduction of allegedly impermissible testimony. The *Tarallo* court noted, however, that the trial court in that case had considered a mid-trial objection by petitioner's counsel as a motion to suppress, 433 F.2d at 7, substantially the same situation as developed here.

LiPuma also argues that *Tarallo* differs from this case because it was decided under § 813–d of the New York Code of Criminal Procedure, which had been construed by the New York courts as precluding the mid-trial consideration of motions to suppress, whereas the present case is governed by § 813–d's successor, NYCPL § 710.40, which allegedly vested the trial court with discre-

tion to entertain such mid-trial suppression motions. This argument is likewise without substance. A comparison of § 813–d of the Code of Criminal Procedure (reproduced at 433 F.2d at 7, n. 4) with NYCPL § 710.40 as it stood in May of 1974 (the time of LiPuma's trial—§ 710.40 was thereafter amended twice, on September 1, 1974 and September 1, 1976) reveals little if anything by way of substantive differences between the provisions. Further, it was not until September 1, 1974, four months *after* LiPuma's trial, that New York enacted NYCPL § 255.20, dealing with general procedure on all pre-trial motions and explicitly providing that the court "in the interest of justice and for good cause shown, may, *in its discretion, at any time before sentence*, entertain and dispose of the [pre-trial] motion on the merits." (Emphasis added.) The passage of NYCPL § 255.20 lends further support to the view that at the time of LiPuma's trial, the trial judge did not have the discretion under the state law to hear this suppression motion at mid-trial. A failure to comply with NYCPL § 710.40 has been shown, and *Tarallo, supra,* must be applied. This court said in *Tarallo, supra,* 433 F.2d at 8, "Tarallo failed to comply with 813–d of the New York Code of Criminal Procedure and *therefore may not raise his objection on a habeas corpus petition.*" (Emphasis supplied.) The petitioner is, in the light of that decision, therefore, precluded from raising his objection to the admitted evidence. *See also, United States ex rel. Scott v. LaVallee,* 379 F.Supp. 111, 113–14 (S.D.N.Y. 1974).

■ While we find *Tarallo, supra,* applicable here, this does not dispose of petitioner's claim that the *reason* he failed timely to move for suppression of the challenged testimony and physical evidence was because of his attorney's alleged incompetence and ineffective assistance. As to LiPuma's claim under the Sixth Amendment that his counsel was incompetent, we are of the opinion that the district court misapplied prior rulings of this court, which, in declaring a standard for measuring ineffective assistance of counsel claims, is rigorous, primarily because petitioners are more likely than not to equate their failure to escape

conviction with their counsel's alleged incompetence, regardless of the evidence against them and other circumstances attendant upon a particular trial, *see, e. g., Slawek v. United States,* 413 F.2d 957, 958 (8th Cir. 1969). Accordingly, this court has been consistent in repeatedly holding that

> "in order to be of constitutional dimensions the representation [must] be so 'woefully inadequate "as to shock the conscience of the Court and make the proceedings a farce and a mockery of justice." ' *United States v. Currier,* 405 F.2d 1039, 1043 (2d Cir.), cert. denied, 395 U.S. 914, 89 S.Ct. 1761, 23 L.Ed.2d 228 (1969), quoting *United States v. Wight,* 176 F.2d 376, 379 (2d Cir. 1949), cert. denied, 338 U.S. 950, 70 S.Ct. 478, 94 L.Ed. 586 (1950); *see also United States ex rel. Walker v. Henderson, supra,* 492 F.2d [1311] at 1312 [(2d Cir.), cert. denied, 417 U.S. 972, 94 S.Ct. 3179, 41 L.Ed.2d 1144 (1971)]; *United States v. Sanchez,* 483 F.2d 1052, 1057 (2d Cir. 1973) [cert. denied, 415 U.S. 991, 94 S.Ct. 1590, 39 L.Ed.2d 888 (1974)]." *United States v. Yanishefsky,* 500 F.2d 1327, 1333 (2d Cir. 1974).

In *Yanishefsky, supra,* an appeal from a conviction for introducing and attempting to introduce narcotic substances into a federal prison contrary to 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A) and 18 U.S.C. § 1791, appellant argued that her attorney should have requested a suppression hearing as to identification testimony of a corrections officer and an inmate which "allegedly 'was indisputably the product of an impermissibly suggestive' pre-trial photographic display. . . . ." 500 F.2d at 1329. After a review of the testimony, this court ruled that the corrections officer's identification of the appellant was based on "his independent recollection of the events and that he was not relying on the photograph which he selected at the arguably impermissibly suggestive display." *Id.* at 1331. Further, in applying the "mockery of justice" standard to appellant's Sixth Amendment, ineffective assistance of counsel claims, the *Yanishefsky* court rejected counsel's invitation to adopt the less stringent standard of oth-

er Circuits that a defendant is entitled to " 'counsel reasonably likely to render and rendering effective assistance,' *Beasley v. United States,* 491 F.2d 687, 696 (6th Cir. 1974), or that an accused be afforded counsel of 'normal competency.' *Moore v. United States,* 432 F.2d 730, 737 (3rd Cir. 1970) (en banc)." 500 F.2d at 1333, n. 2. More recent attempts to have this court re-examine the "farce and a mockery of justice [test]" of *United States v. Wight, supra,* 176 F.2d at 379, include *Rickenbacker v. Warden,* 550 F.2d 62, 65 (2d Cir. 1976); *United States v. Taylor,* 562 F.2d 1345 at 1360 (2d Cir. 1977); *United States v. Rodriguez et al.,* 556 F.2d 638 at 642 (2d Cir. 1977); *United States v. Medico,* 557 F.2d 309 at 318 (2d Cir. 1977); and *United States v. Bubar et al.,* slip opinion at 4519, 4536 (2d Cir. 1977). This court has consistently adhered to the *Wight* standard.

Turning to the facts of the instant case with the above principles in mind, it is necessary to examine the strength of the prosecution's case, *United States ex rel. Marcelin v. Mancusi,* 462 F.2d 36, 43 (2d Cir. 1972), *cert. denied,* 410 U.S. 917, 93 S.Ct. 977, 35 L.Ed.2d 279 (1973). The State presented the line-up and in-court identification testimony of Mrs. Geibel, who had entered her suite at the Berkshire Hotel to witness petitioner sitting at the desk in her sitting room and next saw LiPuma's accomplices emerging from her bedroom. The Geibels' subsequent examination of their room revealed the absence of the small pill-box, later found on the person of Raimondo. Mrs. Geibel was able to pick LiPuma out of a police line-up on the night of the robbery, a procedure challenged through a pre-trial suppression or *"Wade"* motion, by petitioner's allegedly incompetent trial counsel. A hearing on this motion was held on the day preceding the trial before State Supreme Court Justice Fraiman, the trial judge. He ruled that the evidence of the line-up identification was admissible. In addition, Mrs. Geibel made an in-court identification of LiPuma at the latter's trial, and said, "as soon as I saw him I could identify him. I never would forget that face." The district court, which did not hear or observe Mrs. Geibel but read the transcript of her testimony at the state court trial, characterized it as,

> "[T]he identification of defendant by an elderly witness whose direct observation of 'the stranger sitting at the desk' had lasted no longer than seconds, whose line-up identification of LiPuma had occurred under somewhat suggestive conditions, and whose husband, at the line-up, had been unable to identify LiPuma as 'the stranger' whom he had earlier observed during a significantly longer period than had his wife."

This court is in as good a position as the district court to judge from the record; and we cannot agree that the district court made a fair and accurate assessment of Mrs. Geibel and her testimony. On the contrary, this court is of the view that Mrs. Geibel, as a witness, independently furnished strong proof of the State's charge. Furthermore, the district judge's unsupported and unspecified view that the line-up was conducted under "somewhat suggestive conditions" must be assessed against the fact that Justice Fraiman, the trial judge, ruled, after a hearing, that the line-up identification was proper and admissible. Mr. Geibel's difficulty in recounting the events and in identifying the intruders was explained by the fact that he had just left the hospital after brain surgery and by the added factor that he was greatly shaken by the burglary.

In addition to Mrs. Geibel's identifications of the petitioner, the State offered the testimony of the three police officers, who made the arrest in Room 613, concerning the circumstances attendant upon those arrests. LiPuma argued that a pre-trial suppression motion should have been addressed to all of this testimony. As noted earlier, the district court stated that it could not conclude, beyond a reasonable doubt, that "the motion, had it been advanced, would have ultimately failed." It is the opinion of this court, however, that the viability of LiPuma's suppression motion is quite to the contrary and that there was little or no likelihood that a suppression motion would have been granted as to those counts on which he was convicted.

■ It is also our view that the district court applied an improper standard in reviewing the likelihood of the suppression motion's success. In addition to holding without any supporting authority,[3] that it could not conclude, "beyond a reasonable doubt" that LiPuma's suppression motion would have failed had it been made in a timely fashion, the court below ruled that there was a clear "reasonable possibility of prejudice to petitioner as a result of his counsel's glaring neglect . . . ." *Rosner, supra,* 421 F.Supp. at 792. Traditionally, the burden of proof has been on the petitioner in a federal habeas corpus proceeding to prove, by a fair preponderance of the evidence, that his conviction must be vacated and his release ordered. The district court's use of a "beyond a reasonable doubt" standard to evaluate the merits of LiPuma's suppression motion confuses a measure of proof imposed upon the prosecution in establishing the elements of a crime where the issue before the trier of fact is the guilt or innocence of the defendant, with the measure of proof applicable in most civil cases, including habeas corpus proceedings.[4] *See, United States ex rel. Curtis v. Zelker,* 466 F.2d 1092, 1097 (2d Cir. 1972), *cert. denied,* 410 U.S. 945, 93 S.Ct. 1405, 35 L.Ed.2d 612 (1973); *United States ex rel. Schuster v. Herold,* 410 F.2d 1071, 1085 (2d Cir.), *cert. denied,* 396 U.S. 847, 90 S.Ct. 81, 24 L.Ed.2d 96 (1969).

Further, as to the "reasonable possibility of prejudice" standard applied below, we are persuaded that the district court erred here as well. Given the high standards mandated in this Circuit for the review of a claim of ineffective assistance of counsel, *see, United States v. Wight, supra,* 176 F.2d at 379, and the maxim that " 'errorless counsel is not required,' " *United States v. Matalon, supra,* 445 F.2d at 1218–19, the prejudice resulting from counsel's alleged neglect must be actual and not merely possible. This standard is consistent with *Wight* and *Matalon, supra,* as well as with recent authority in this Circuit that where defendants claim that a potential conflict of interest on the part of their attorney prejudiced their cause, "some specific instance of prejudice" must be shown "before it can be said that an appellant has been denied the effective assistance of counsel." *United States v. Carrigan,* 543 F.2d 1053, 1055 (2d Cir. 1976) (citing cases.)

■ The State can point to the paucity of any evidence offered by the defendant, which called for suppression, particularly with respect to Counts 1 and 2 on which LiPuma was ultimately convicted. The State can also marshall in opposition to a suppression motion, the strong evidence, which was in its hands, that the warrantless entry into the room was made with Doyle's consent, that once Officer Donnelly was legitimately inside the room, he opened the closet door and observed that someone was resting his hand on the closet shelf, which justified the order for those hiding in the closet to come out. Raimondo and LiPuma were the two that emerged. The Geibel pillbox was then found in Raimondo's pocket.

---

3. It is not entirely possible to sort out from the district court's findings and conclusions on the issue of prejudice the degree of reliance which the court placed upon the evidence at the habeas corpus hearing, which consisted entirely of testimony by defense lawyers saying in large measure what their respective defendants said to them. Though generally not objected-to, it was largely hearsay and self-serving and of limited probative force. Of the three accused only Doyle took the witness stand, and this only in LiPuma's case, after Doyle, himself had pled guilty. Doyle, is therefore, the only one whose personal testimony can be compared with that of his attorney who said what Doyle said to him. The latter includes a number of things not testified to by Doyle at the trial.

4. If, however, the issue before the district court had been the substantive questions of whether a Fourth Amendment violation had taken place and whether the tainted testimony and evidence should have been suppressed in this case, the question of consent by Doyle to the entry into Room 613 would inevitably have arisen. In that event the burden would have been on the State to show that consent "was in fact voluntarily given and not the result of duress or coercion, express or implied." *Schneckloth v. Bustamonte,* 412 U.S. 218, 248, 93 S.Ct. 2041, 2059, 36 L.Ed.2d 854 (1973).

The foregoing facts and testimony make clear that petitioner's suppression motion in the present case was not sufficiently supported and that failure to file this motion prior to trial did not constitute ineffective assistance of counsel under the Sixth Amendment. The resultant proceedings were thus a far call from "a farce and a mockery of justice," *United States v. Wight, supra,* 176 F.2d at 379, and there was no " 'total failure to present the cause of the accused in any fundamental respect,'" *United States v. Garguilo,* 324 F.2d 795, 796 (2d Cir. 1963). Moreover, to rule otherwise would go a long way towards affirmatively requiring defense counsel to file a suppression motion no matter how tenuous the grounds supporting it, for counsel's own protection if for no other reason. Counsel must be able to exercise professional discretion in deciding whether there are sufficient grounds for a potentially meritorious suppression motion. Such strategic and discretionary decisions are not lightly to be reexamined by courts whenever the defendant is convicted and a new or revived claim of ineffective assistance of counsel is raised, almost automatically, by the defendant. Indeed, it is ironic and paradoxical in the present case that petitioner protests so bitterly as to the admission of the policemen's damaging testimony that they found him hiding in the closet along with Raimondo as it bears on the *Geibel* burglary while he acknowledged in open court at his trial that the dismissal of the counts of the indictment relating to the *Robinson* burglary, as to which the same police testimony was relevant and admissible, did not prejudice him. Moreover, both the State trial court and the United States District Court concluded that any fall-out or spill-over from the stricken evidence, presented under the dismissed Counts, four, five and six, was not prejudicial to LiPuma.[5]

■ We are also of the opinion that a full and fair consideration was given to all of the issues in this case by the courts of the State of New York and the case comes within the holding in *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).[6]

That portion of the district court's order granting habeas corpus relief pursuant to 28 U.S.C. § 2254 is reversed; that portion of the order denying relief as to the other issues raised by the appellant is affirmed. The petition for habeas corpus is, therefore, denied, and it is ordered dismissed.

---

**5.** *See also, Wainwright v. Sykes,* —— U.S. ——, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), where the Court applied the rule of *Francis v. Henderson,* 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976), which barred federal habeas corpus review absent a showing of "cause" and "prejudice" attendant to a state procedural waiver, to a situation involving a waived objection to the admission of a confession at trial.

**6.** While *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), was decided over two months prior to the district court's decision in the present case, it was not considered by the court below. In *Stone,* the Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. at 494, 96 S.Ct. at 3046 (footnotes omitted). In the present case, the district court noted in its opinion that all three points in petitioner's federal habeas corpus petition, including the claim that LiPuma had been ineffectively assisted by counsel in violation of the Sixth Amendment, had been raised and argued before the state courts, *United States ex rel. Rosner v. Commissioner,* 421 F.Supp. 781, 783 (S.D.N.Y.1976). Accordingly, LiPuma certainly was afforded an "opportunity for full and fair litigation" of his constitutional claim in the State courts, and *Stone* must be applied here as an additional ground for reversal of the district court's order.

The fact that petitioner's claim is ostensibly grounded on the Sixth, rather than the Fourth, Amendment does not negate *Stone's* applicability, because at the heart of this case lies an alleged Fourth Amendment violation. That is, should petitioner have succeeded in showing, in the state trial court, that the police entry into Room 613 was an unconstitutional search and seizure, the remedy decreed for such a violation would have been the exclusion of the allegedly "tainted" testimony of the police officers regarding the circumstances of LiPuma's arrest. The same remedy of exclusion is now sought by way of a collateral habeas corpus proceeding, where a Sixth Amendment claim has been added for good measure. The majority wrote in *Stone* that

"[o]ur decision today is *not* concerned with the scope of the habeas corpus statute as

authority for litigating constitutional claims generally. We do reaffirm that the exclusionary rule is a judicially created remedy rather than a personal constitutional right, see *supra*, [428 U.S. at 486, 96 S.Ct. at 3047–3048,] and we emphasize the minimal utility of the rule when sought to be applied to Fourth Amendment claims in a habeas corpus proceeding." 428 U.S. at 495, n. 37, 96 S.Ct. at 3052 (emphasis in original). The above considerations apply to the substance of petitioner's Fourth Amendment claim underlying this case.

Moreover, the facts necessary to a full review of LiPuma's Fourth Amendment claim were fully developed at trial through the testimony of the police officers as well as Doyle. This testimony was part of the record on appeal of the conviction to the Appellate Division and the petition to the State Court of Appeals. In short, the substance of LiPuma's Fourth Amendment claim was before the New York courts throughout the prior proceedings in this case.