Freddie **BROCKINGTON**, Petitioner,

v.

William C. **QUICK**, Respondent.

No. 79 Civ. 643.

United States District Court,
S. D. New York.

March 25, 1980.

Freddie Brockington, pro se.

Robert Abrams, Atty. Gen., New York City, for respondent; John M. Weinberg, Asst. Atty. Gen., New York City, of counsel.

## OPINION

SOFAER, District Judge:

Petitioner Freddie Brockington, together with Theodore Washington and Michael Jones, was indicted and charged with robbery in the first degree, robbery in the second degree (two counts), assault in the second degree (two counts), grand larceny in the third degree and criminal possession of a weapon in the fourth degree. Michael Jones pleaded guilty to attempted robbery in the third degree. Petitioner and Washington pleaded not guilty and proceeded to a jury trial before Justice Florence Kelly in Supreme Court, New York County. Petitioner was represented by assigned counsel, who replaced another assigned attorney before trial. Defendant Washington was represented by privately retained counsel, who replaced an assigned attorney on the second day of trial. Both defendants were convicted of one count of robbery in the second

degree,[1] and were sentenced as predicate felons to an indefinite term of imprisonment (from three years and nine months, to seven and one-half years).[2]

Brockington appealed his conviction to the Appellate Division, First Department, which affirmed without opinion on October 12, 1978. The New York Court of Appeals denied leave to appeal. Petitioner now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. All issues raised in this proceeding were raised in petitioner's state court appeal, so he has exhausted state remedies.

The petition, filed pro se, challenges Brockington's conviction on several grounds. Some of the facts presented are troubling. The writ is denied, however, for the reasons that follow.

A. *Effective Assistance of Counsel*

Petitioner's first claim is that he was denied his right to the effective assistance of counsel. A determination of the effectiveness of counsel cannot be divorced from the factual situation with which counsel was confronted. When the prosecution has an overwhelming case there may be little that defense counsel can do. *See United States v. Katz,* 425 F.2d 928, 930 (2d Cir. 1970).

The case against Brockington was very strong. The evidence at trial established that, on November 17, 1975, at approximately 9:20 P.M., three individuals entered a Checker taxi driven by the complaining witness Kalman Jacobs. Jacobs drove his passengers to 25th Street and Lexington Avenue at their request. The trip took approximately 12 minutes, during which time Jacobs had ample opportunity to observe his passengers' faces. As the taxi approached its destination and stopped, one of the three men moved to the jump seat of the cab and struck Jacobs on the right side of his face with a blunt instrument. Another of the men hailed a second taxi while the third man went around to the driver's open window, reached inside and removed $65.00 in bills from Jacobs' shirt pocket.

Jacobs used an emergency button in his cab to radio his dispatcher, Stuart Fogler, that a robbery was in progress. Jacobs then observed his assailants enter the second taxi (six or so feet away) and radioed its location, operating company and number to Mr. Fogler, who wrote it down and radioed the police. Fogler also notified the second taxi's operating company and dispatched a general alert to all taxis in that area on his radio network.

Jacobs reentered his cab and pursued the second taxi. Its driver, David Kaplan, noticed the taxi following him and recognized Jacobs as the driver he had observed standing outside a taxi and speaking into his radio at 25th Street and Lexington. Jacobs later lost sight of the second taxi but kept in touch with Fogler by radio. Mr. Kaplan discharged his passengers at 57th Street and Third Avenue. Stephen Rosenthal, another taxi driver who belonged to Fogler's radio network, and had heard the robbery alert, saw the three assailants leave Kaplan's taxi, and run on 57th Street to a third cab, driven by Nicholas Topaloglou. Rosenthal followed the third cab, broadcasting his movements to his dispatcher until the third taxi was stopped by the police. The cab's passengers were Brockington, Washington and Jones, who were immediately arrested and taken to a station house.

At the station house, all three men were positively identified by Kalman Jacobs as his assailants. Jacobs specifically identified Brockington as the passenger who struck him. Topaloglou identified Brockington at trial as one of his three passengers when his taxi was stopped by the arresting officer. After Jacobs' identification at the station house, the three men were searched; $66.00 in crumpled bills was found, divided roughly evenly between them. The use of a

---

1.  The court submitted to the jury five counts of the original seven count indictment, dismissing one of the assault charges and the weapons count.

2.  Brockington was released on parole on August 13, 1979. He has informed this court by letter of his intention to pursue his application for *habeas corpus* relief.

blunt instrument was established at trial by Jacobs' testimony concerning the robbery sequence itself, as well as by his later visit to a physician for treatment of his injury. Additionally, the arresting officer testified that he observed Jacobs' injured face at the time of the identification.

Confronted with so strong and persuasive a case, the attorneys for petitioner and his co-defendant Washington presented a unified defense at trial. This defense "team" led by Washington's retained attorney, called no witnesses but pursued a coherent theory in their opening statements, cross-examinations and summations. Their strategy was to overcome the state's evidence of a robbery by suggesting to the jury that the defendants, both black, had merely quarreled with the white complainant whose later claim of a robbery was motivated by anger and racial prejudice. This strategy required that defendants concede through counsel that they were two of the three passengers in complainant's taxi at the time in question, a limited sacrifice in light of the State's overwhelming evidence establishing a chain of testimony identifying the defendants from the moment they left Jacobs' cab until their arrest.

■ In evaluating a claim of ineffective assistance of counsel, the Second Circuit has adhered to the stringent standard first enunciated thirty years ago in *United States v. Wight,* 176 F.2d 376, 379 (2d Cir. 1949), *cert. denied,* 338 U.S. 950, 70 S.Ct. 478, 94 L.Ed. 586 (1950): Mere allegations of incompetency or insufficiency will not ordinarily suffice as grounds for issuing a writ of habeas corpus "unless the purported representation by counsel was such as to make the trial a farce and a mockery of justice." To reach constitutional dimensions, the representation must be so inadequate as to "shock the conscience of the

Court." *Indiviglio v. United States,* 612 F.2d 624, 627 (2d Cir. 1979); *United States v. Yanishefsky,* 500 F.2d 1327, 1333 (2d Cir. 1974). Even assuming that the Second Circuit were to shift to the standard of "reasonable competence" adhered to by some other circuits, *see United States v. Aulet,* 618 F.2d 182, 187–190 (2d Cir. 1980), the same result would be proper here.

■ Petitioner's allegations fall far short of the requisite showing. His attorney formulated and pursued a rational and plausible defense theory, cross-examined the State's witnesses with vigor, made frequent objections and succeeded in obtaining acquittals on all but one of the counts ultimately sent to the jury. The record reveals that petitioner's counsel failed to prepare for trial, to conduct obvious factual and legal investigations, and to make important pre-trial motions. Though serious and unprofessional, these failures were insufficient in context to warrant relief. Thus, while counsel was late in making a motion under *People v. Sandoval,* 34 N.Y.2d 371, 357 N.Y.S.2d 849, 314 N.E.2d 849 (1974), and was unprepared at the hearing,[3] petitioner has failed to establish any prejudice, since under New York law his lengthy record of theft-related offenses, as well as his one drug-related offense, were admissible to impeach his credibility as a witness in his own behalf. *E. g., People v. Duffy,* 36 N.Y.2d 258, 367 N.Y.S.2d 236, 326 N.E.2d 804, *cert. denied,* 423 U.S. 861, 98 S.Ct. 116, 46 L.Ed.2d 88 (1975); *People v. Sandoval, supra.*

Petitioner's counsel also failed timely to move to suppress the money taken from Brockington at the station house, and thereby lost any opportunity thereafter to raise

---

**3.** Counsel made his *Sandoval* motion after voir dire was completed. Although such motions are normally made before voir dire, he was apparently unaware that his predecessor had earlier made a *Sandoval* motion which was in petitioner's court file. At the hearing, counsel had no copy of petitioner's criminal record and obtained one from the court, discovering at the same time that petitioner was subject to an outstanding bench warrant, under an alias, for a class E felony. Justice Kelly criticized counsel for doing nothing more than reading petitioner's criminal record and for proceeding improperly, and she suggested that counsel prepare his case.

this claim.[4]  Counsel had nothing to lose by timely moving to suppress, and his failure to do so was clearly a lapse in performance rather than a tactical judgment.[5]

Nevertheless, counsel could reasonably have foregone making a motion to suppress at any time, since the record reveals overwhelming evidence of probable cause for petitioner's arrest.  Had a timely motion to suppress been made, it would have been denied, so counsel's failure cannot be deemed prejudicial.  *See, e. g., United States v. Aulet, supra,* pp. 190–191; *United States v. Yanishefsky, supra.*  Finally, while counsel failed to conduct a vigorous *Wade* hearing,[6] petitioner suffered no actual prejudice, since petitioner's challenges to the identification procedure were sufficiently explored by his co-defendant's counsel, and by questions and comments from the bench.  Justice Kelly concluded, in fact, that the identification procedure was suggestive, allowing Jacobs to testify to his station house identification only because the totality of the circumstances indicated his identification was reliable in spite of the suggestiveness of the confrontation.  The evidence is insufficient to warrant relief on this ground.  *See, e. g., Li Puma v. Commis-*

*sioner, Department of Corrections, State of New York,* 560 F.2d 84 (2d Cir.), *cert. denied,* 434 U.S. 861, 98 S.Ct. 189, 54 L.Ed.2d 135 (1977).

## B. *Pretrial Identification Procedure*

Petitioner's remaining claims relate to the pretrial identification procedure adopted by the police, and, consequently, the in-court identification that followed at the trial.  At the *Wade* hearing, the complainant testified to the facts surrounding his pretrial identification of the defendants.  He was brought to the station house shortly after the defendants' arrest, some thirty to forty-five minutes after the robbery occurred.  He was then sent to the squad room (about 30 by 40 feet in size), where he saw a large number of people, both black and white.  The complainant testified that the defendants were in no way segregated or otherwise stood out from the group.  They were not handcuffed, and no one pointed out the defendant to the complainant.  (Tr. 30–38).  He further testified that the three defendants were standing together; that in the squad room, besides the three defendants, "[t]here was a lot of people.  There was detectives, all kinds, civilian

---

4.  Petitioner also contends he was denied an opportunity for a full and fair hearing of his Fourth Amendment claim, because the trial court incorrectly ruled that counsel's motion to suppress was untimely, and improperly failed to exercise its discretion to entertain the motion.  Counsel first moved to suppress on the afternoon of the sixth day of trial.  (Tr. 519–529)  Under § 255.20 of the Criminal Procedure Law, this motion was untimely since it was made more than 45 days after petitioner's arraignment.  The statute provides that all untimely pretrial motions may be summarily denied, unless based upon grounds of which the defendant could not reasonably have been aware, or which could not reasonably have been raised, or unless the trial court, in the interest of justice and for good cause shown, decides in its discretion to entertain and dispose of the motion on its merits at any time before sentence.  Justice Kelly noted, in denying the motion, that counsel had been in the case nearly five weeks and had answered ready, so this was an appropriate case in which to enforce article 225 to insure its purposes are achieved.  *See, e. g., People v. Selby,* 53 A.D.2d 878, 385 N.Y.S.2d 335 (2d Dep't 1976), *aff'd,* 43 N.Y.S.2d 791, 402 N.Y.S.2d 392, 373 N.E.2d 268

(1977).  In any event, petitioner's failure to make a timely motion to suppress or to carry his burden of proving good cause for his failure, constitutes a waiver of his right to assert his claim in this proceeding in the absence of a showing of actual prejudice, which has not been made.  *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2593, 53 L.Ed.2d 714 (1977).

5.  In making his untimely motion to suppress, counsel for petitioner stated that he had lacked ample time to make the motion, and that both he and his wife had been ill.  He also said, however, that he could not be expected to give up his health, his family, his friends, his business and his need to make a living for this case, and that judges expect too much of counsel who are assigned on an 18b case to represent an indigent defendant.  (Tr. 529)

6.  *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).  The hearing record reveals that counsel failed to ask a single question about the station house identification procedure, that he called no witnesses, and that the court twice found it necessary to remind him that "this is an identification hearing, counsel."  (Tr. 16)

and uniformed" (Tr. 31); and that one of his assailants was walking next to someone in "plain clothes." (Tr. 34)

■■ Petitioner claims that this identification procedure was unnecessarily suggestive and therefore violated due process. The conclusion that the procedure was suggestive is not compelled by the record. But even assuming, as petitioner contends and as the trial court found, that it was suggestive, that fact is not constitutionally dispositive. While the "corrupting effect of the suggestive identification" is a factor to be weighed, "reliability is the linchpin" in determining the constitutional propriety of an identification. *Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977). Reliability must be measured in light of the "totality of the circumstances" surrounding the identification. *Neil v. Biggers,* 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972). *See also, Stovall v. Denno,* 388 U.S. 293, 301–02, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967). The relevant factors "include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." *Manson v. Brathwaite, supra,* 432 U.S. at 114, 97 S.Ct. at 2253. *See Neil v. Biggers, supra,* 409 U.S. at 199–200, 93 S.Ct. at 382.

■ Justice Kelly gave careful consideration to these factors and to the record in ruling on the *Wade* motion, and her decision is therefore persuasive. *Compare, Jackson v. Fogg,* 589 F.2d 108, 111–12 (2d Cir. 1978). She found the complainant's testimony to be credible and explicitly concluded that the complainant had sufficient opportunity to observe his assailants, that he was able to form a clear picture of them, and that although the procedure was suggestive the identification was sufficiently close in time to the incident to minimize any risk of misidentification. Consequently, she held that complainant could identify the defendants at the trial and could testify as to the prior identification. (Tr. 45)

These findings and conclusions were clearly warranted by the record and would be sufficient to dispose of petitioner's claims, but for the fact that one item of evidence was not before Justice Kelly at the hearing. After the radio dispatcher's direct examination at the trial, the prosecution turned over to the defense material required to be disclosed by *People v. Rosario,* 9 N.Y.2d 286, 213 N.Y.S.2d 448, 173 N.E.2d 881, *cert. denied,* 368 U.S. 866, 82 S.Ct. 117, 7 L.Ed.2d 64 (1961). Included in the material was a statement made by the dispatcher to the police that the complainant, when asked by his dispatcher for a description of the robbers seconds after the crime, said: "Three fucken nigras. They all look alike." This statement, petitioner contends, changes the totality of the circumstances surrounding complainant's pretrial identification by casting doubt on his ability to identify his assailants.

Complainant's statement to the dispatcher is disturbing, reflecting as it does a racially biased reaction. Even more disturbing is the fact that the statement was not revealed by the prosecution at the *Wade* hearing, and was revealed only after direct examination of the dispatcher, and after the complainant had been cross-examined. Furthermore, the defense had specifically attempted to prove in cross-examining Jacobs, that he was racially biased. (Tr. 239, 245–46, 310, 320, 355–358)

The statement seems only tangentially related, however, if at all, to the accuracy of complainant's identification. It was an expression of anger, uttered immediately after the complainant had been victimized and brutally struck, rather than an effort to describe the attackers. Viewed in context, complainant's outburst was not an indication that he was unable to identify his assailants in a calmer moment. In fact, he confidently did so only a short while later (Tr. 35, 38, 249–53, 300–01), despite the fact that a number of other blacks were simultaneously present. (Tr. 35–36) Moreover, defense counsel's only response to this evidence was to join co-counsel in requesting that Jacobs be made available for further

questioning at some later point in the trial; at no time did counsel attempt to use this evidence to challenge the *Wade* ruling. In sum, when the entire record is considered, no basis exists warranting a decision for petitioner, or even a hearing, since no fact has been presented which casts sufficient doubt on the reliability of the identification, or on the petitioner's guilt.

Plaintiff would have the writ issue, however, simply because the statement was withheld from the defense at the *Wade* hearing, and was surrendered at trial only after the complainant had testified and been cross-examined. For several reasons the extraordinary remedy sought would be an inappropriate response to the prosecutor's conduct.

First, the statement is not readily characterized as "exculpatory" on the identification issue. It does not in reality prove that complainant could not tell his assailants from other blacks. However, once the defendants advanced the claim that they were the victims of complainant's malice, the statement did become pertinent and helpful to the defense. But the statement was revealed in ample time for the defense to utilize it, and the complainant was recalled for examination on the statement, at defendant's request, shortly before summations.

Second, neither the attorneys for the defendants, nor their respective predecessors, made a specific pretrial request for the material at issue; both chose to rely instead upon the information provided by the State through its Voluntary Disclosure Form. Absent a specific request for the material at issue, a constitutional violation occurs only if the omitted evidence creates a reasonable doubt that did not otherwise exist. *United States v. Agurs*, 427 U.S. 97, 112–13, 96 S.Ct. 2392, 2401–2402, 49 L.Ed.2d 342 (1976). The statement is insufficiently weighty to create serious doubt concerning Justice Kelly's determination on the identification, and the jury, by convicting petitioner after having the statement brought to their attention, implicitly found it created no reasonable doubt at the trial. Peti-

tioner's claim that earlier disclosure would have permitted trial counsel to adopt a different strategy is speculative. Under the circumstances of this case, even assuming constitutional error in either the admission of complainant's identification or in withholding his statement, the independent proof of guilt would render the error harmless beyond a reasonable doubt. *See, e. g., Milton v. Wainwright*, 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972); *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

Accordingly, the petition for a writ of habeas corpus is denied. F.R.C.P. 12(c).

SO ORDERED.